**FILED**

JUL 0 6 2016

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ a.c.c._____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO UNIFIED PORT DISTRICT,<br><br>                            Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, successor-in-interest to Landmark Insurance Company,<br><br>                           Defendant. | Case No.: 3:15-cv-1401-BEN-MDD<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO DISMISS; and**<br><br>**(2) DENYING MOTION TO SEVER AND STAY**<br><br>**[Docket No. 15]** |

Before this Court is a Motion to Dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) and a Motion to Sever and Stay Certain Claims pursuant to Federal Rules of Civil Procedure 21 and 42, filed by Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), successor-in-interest to Landmark Insurance Company ("Landmark"). (Docket No. 15.) Plaintiff San Diego Unified Port District (the "Port") filed an Opposition, to which Defendant replied. (Docket Nos. 16, 17.) For the reasons stated below, the Court **DENIES** Defendant's Motions.

///

1

# BACKGROUND

National Union[1] sold the Port primary and umbrella liability insurance, promising to defend and indemnify the Port against certain property damage liability claims or lawsuits.  (FAC ¶¶ 5-8.)  National Union issued four primary policies to the Port (collectively, "Primary Policies").  (FAC ¶¶ 6, 7 & Exs. A-D.)  The parties agree that two of the primary policies are exhausted ("Exhausted Primary Policies").  (FAC ¶ 7 & Exs. C, D (Policy Nos. SMP 8002308 & GLA 5000574.))  There are two other primary policies, which the Port contends are not exhausted ("Unexhausted Primary Policies").  (FAC ¶ 6 & Exs. A, B (Policy Nos. GLA 5000110 and SMP 8002932.))

National Union also sold the Port "the first layer of liability insurance directly above the Unexhausted Primary Policies and Exhausted Primary Policies in the form of" umbrella insurance ("Umbrella Policies").  (FAC ¶ 8 & Exs. E-H.)  Coverage under the four Umbrella Policies is triggered once the Primary Policies are exhausted.  (FAC ¶¶ 15, 16.)

According to the FAC, the Port tendered, and National Union agreed to provide a defense under the Unexhausted Primary Policies to certain claims ("Claims") and lawsuits ("Suits") asserted against the Port.[2]  (FAC ¶¶ 11, 12.)  Subsequently, National Union informed the Port that it "unilaterally would be assigning payments for one of the Port's defense experts to [National Union's] indemnity obligation against the Unexhausted Primary Policies' limits."  (FAC ¶ 13.)  National Union then tendered the

---

[1] On January 1, 2012, Landmark merged into National Union, with National Union as the surviving entity.  Because National Union is the surviving company, this Order refers to Defendant as National Union, even though the FAC makes allegations about Landmark.
[2] The California Supreme Court has explained that a "suit" means a "civil action commenced by filing a complaint," and "[a]nything short of this is a 'claim.'"  *Foster-Gardner, Inc. v. Nat'l Union Ins. Co.*, 18 Cal. 4th 857, 878 (1998).  A "claim" may be "a demand for payment communicated in a letter, or a document filed to protect an injured party's right to sue a governmental entity, or the document used to initiate a wide variety of administrative proceedings."  *Id.* at 879.

1   asserted remaining policy limits to the Port and informed the Port that "[National Union]
2   considered the Unexhausted Primary Policies to be exhausted and that it would cease
3   defending the Port in the Claims and Suits." (FAC ¶ 13.)  National Union did not seek a
4   judicial determination concerning exhaustion.  (FAC ¶ 14.)  The Port contested National
5   Union's assertion that the Unexhausted Primary Policies were exhausted.  (FAC ¶ 15.)
6   The Port also asserted that even if the Unexhausted Primary Policies were exhausted, "the
7   terms of the Umbrella Policies would require National Union to drop down and defend
8   the Port in the Claims and Suits." (FAC ¶ 15.)

9        National Union "repeatedly disputed" a defense obligation under the Umbrella
10  Policies.  But on September 15, 2015, between the filing of the original complaint and the
11  operative FAC, National Union acknowledged through a letter from counsel that it "has a
12  defense obligation to defend [S]uits in accordance with the terms of its [U]mbrella
13  Policies." (FAC ¶ 16; Mot. Ex. 1.)[3]  As a result of National Union's failure to defend, the
14  Port has incurred its own defense costs for the Claims and Suits.  (FAC ¶ 18.)

15       On November 20, 2015, the Port filed the FAC.  The first claim for relief seeks a
16  declaratory judgment that the Unexhausted Primary Policies are not exhausted and thus
17  National Union must continue to defend Suits and Claims under them.  The second and
18  third claims ask for a declaratory judgment that National Union must defend Suits and
19  Claims, respectively, under the Umbrella Policies.  The fourth claim for relief asserts

20
21  ——————————————
22  [3] Plaintiff referenced the September 15, 2015 letter in the FAC but failed to attach it.
    Defendant attached the letter to its Motion to Dismiss.  Plaintiff did not dispute the
23  authenticity of the September 15, 2015 letter in its Opposition.  Therefore, the September
    15, 2011 letter is incorporated into the FAC by reference. *See Daw Indus., Inc. v.*
24  *Proteor Holdings, S.A.*, No. 07-cv-1381, 2008 WL 251977, at *1 (S.D. Cal. Jan. 29,
    2008) ("The 'incorporation by reference' doctrine permits district courts to consider, in
25  connection with a motion to dismiss, documents whose contents are alleged in the
    Complaint and whose authenticity no party questions, but which are not physically
26  attached to plaintiff's pleading.").  The Court may consider the letter now without
27  converting the motion to dismiss into a motion for summary judgment. *Brown v. Allstate
    Ins. Co.*, 17 F. Supp. 2d 1134, 1138 (S.D. Cal. 1998).
28

1  breach of contract, and the fifth claim pleads bad faith and a breach of the implied

2  covenant of good faith and fair dealing.

3      National Union moves to dismiss on several grounds.  Principally, it argues that the

4  first claim for relief—a declaration regarding whether the two Unexhausted Primary

5  Policies are exhausted—is dispositive and renders the second through fifth claims moot.

6  (Mot. at 2.)  Therefore, the second through fifth claims should be dismissed.  (*Id.*)  In the

7  alternative, it moves to sever and stay the second through fifth claims for relief pending

8  resolution of the first claim.  (*Id.* at 13-15.)

9  **LEGAL STANDARD**

10      Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint

11  if, taking all factual allegations as true and construing them in favor to the nonmoving

12  party, the complaint fails to state a plausible claim for relief on its face.  *Ashcroft v. Iqbal*,

13  556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

14  Dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable

15  expectation that discovery will reveal evidence of the matter complained of, or if the

16  complaint lacks a cognizable legal theory under which relief may be granted.  *Twombly*,

17  550 U.S. at 556.  "Threadbare recitals of the elements of a cause of action, supported by

18  mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

19  **DISCUSSION**[4]

20      The Court addresses each claim for relief that National Union moves to dismiss and

21  then discusses National Union's Motion to Sever and Stay.

22  **I.   Second Claim for Relief**

23      The second claim seeks a declaratory judgment that National Union must defend

24  Suits under the Umbrella Policies in the event of exhaustion of the primary layer of

25

26  _____

27  [4] The Court finds the Motions suitable for determination on the papers without oral
   argument, pursuant to Civil Local Rule 7.1.d.1.

28

4

1    insurance.  (FAC ¶ 30.)  National Union argues that the second claim for relief is "moot"

2    and "does not present a controversy ripe for determination" because (1) if the Primary

3    Policies are not exhausted, there is no dispute about the Umbrella Policies, and (2) if the

4    Primary Policies are exhausted, then National Union has already acknowledged in its

5    September 15, 2015 letter ("September letter") that it will defend Suits under the

6    Umbrella Policies.  (Mot. at 7.)  The Port contends that the September letter does not

7    moot the need for a judicial determination because it is not binding.  (Reply at 3.)

8         Defendant's arguments, while styled as a Rule 12(b)(6) motion, challenge

9    Plaintiff's standing to bring a declaratory judgment action.  Because standing "pertain[s]

10   to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a

11   motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)."

12   *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *St. Clair v. City of Chico*, 880 F.2d

13   199, 201 (9th Cir. 1989) ("[M]otions raising issue of ripeness are treated as brought under

14   Rule 12(b)(1) even if improperly identified by the moving party as brought under Rule

15   12(b)(6).")  Thus, the Court interprets Defendant's Motion as a 12(b)(1) motion to

16   dismiss for lack of subject matter jurisdiction under the Declaratory Judgment Act.

17        The Declaratory Judgment Act states:  "In a case of actual controversy within its

18   jurisdiction . . . any court of the United States . . . may declare the rights and other legal

19   relations of any interested parties seeking such declaration."  28 U.S.C. § 2201(a).

20   Accordingly, a district court must first inquire whether there is an actual controversy

21   within its jurisdiction.  *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

22   Second, if there is an actual controversy, the court must decide whether to exercise its

23   jurisdiction.  *Id.* at 143-44.

24   **A. Existence of Actual Controversy**

25        An "actual controversy" exists when "there is a substantial controversy, between

26   parties having adverse legal interests, of sufficient immediacy and reality to warrant the

27   issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312

28   U.S. 270, 273 (1941) (finding actual controversy between insurer and insured in

5

1  declaratory judgment action to determine whether insurer had duty to defend).  In the
2  insurance setting, an "actual controversy" may exist even if defendant's liability is
3  contingent.  *See Sentry Ins. v. Provide Commerce, Inc.*, No. 14-cv-2868, 2016 WL
4  1241553, at *3-4 (S.D. Cal. Mar. 30, 2016).  Indeed, "litigation over insurance coverage
5  has become the paradigm for asserting jurisdiction despite 'future contingencies that will
6  determine whether a controversy ever actually becomes real.'"  *Assoc. Indem. Corp. v.*
7  *Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (internal citation omitted).  Courts
8  in this District have held that an insured may seek a declaration whether an insurer has a
9  duty to defend even if that liability has yet to develop.  *Sentry Ins.*, 2016 WL 1241553, at
10 *3-4; *see also Am. States*, 15 F.3d at 144 (actual controversy exists where insurer brought
11 declaratory judgment action to establish whether it had duty to defend or to indemnify
12 insured).
13      The Court finds that there is an actual controversy because the Port has pled a
14 substantial controversy between parties having adverse interests.  Specifically, the Port
15 has shown that the parties have taken different positions regarding Defendant's duty to
16 defend Suits under the Umbrella Policies.  While National Union recently said it would
17 defend Suits under the Umbrella Policies in the September letter, "[v]oluntary
18 discontinuance of alleged illegal activity" by a defendant does not moot a case.  *Iron*
19 *Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 72 (1983); *see also Campbell-Ewald Co. v.*
20 *Gomez*, 136 S. Ct. 663, 670 (2016) (holding that an unaccepted offer of judgment does
21 not moot a case).  National Union's agreement to provide a defense is not binding, and
22 declaratory judgment would offer relief from uncertainty and prevent duplicative
23 litigation in the future.
24      Furthermore, the Port has shown that the dispute, although related to a contingent
25 liability, is ripe for adjudication.  The pendency of a decision whether the Unexhausted
26 Primary Policies are exhausted does not moot the need for judicial relief.  *See Fed. Ins.*
27 *Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 262 (S.D.N.Y. 2010) (declaratory judgment
28 action appropriate to consider even where primary coverage has not been exhausted).

6

3:15-cv-1401-BEN-MDD

1  National Union contends that the Primary Policies are already exhausted.  That issue will

2  be decided in this litigation.  If National Union is correct, then the Umbrella Policies will

3  be triggered.  As noted above, clarifying the parties' legal relations now will avoid future

4  litigation on this issue and may facilitate settlement discussions.

5  **B. Decision to Exercise Jurisdiction**

6  Once a district court has determined whether an actual controversy exists, the court

7  must then determine whether to exercise its subject matter jurisdiction.  *Am. States.*, 15

8  F.3d at 143-44.  In *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942), the Supreme Court

9  provided guidance regarding a court's discretion to entertain declaratory relief.  The

10  *Brillhart* factors require that in deciding whether to exercise its subject matter

11  jurisdiction, the court should (1) avoid needless determination of state laws; (2)

12  discourage litigants from filing declaratory actions as a means of forum shopping; and (3)

13  avoid duplicative litigation.  *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th

14  Cir. 2005) (internal citations omitted); *see also Nat'l Union Fire Ins. Co. v. Tokio Marine*

15  *& Nichido Fire Ins. Co.*, No. 10-cv-1733, 2011 WL 5404115, at *3-4 (S.D. Cal. Nov. 8,

16  2011) (considering *Brillhart* factors in motion to stay declaratory judgment action).

17  "Essentially, the district court 'must balance concerns of judicial administration, comity,

18  and fairness to the litigants.'"  *Am. States*, 15 F.3d at 144 (internal citations omitted).

19  The Court has considered the *Brillhart* factors and concludes that they weigh in

20  favor of the Court exercising jurisdiction.  The claim involves a determination whether

21  the Umbrella Policies must drop down to cover Suits.  "This evaluation should involve a

22  relatively straightforward analysis of the policy, without infringing on novel state law

23  issues." *Progressive Cas. Ins. Co. v. Dalton*, No. 12-cv-00713, 2012 WL 6088313, at *7

24  (E.D. Cal. Dec. 6, 2012) (considering interpretation of insurance contract coverage).  The

25  present action does not appear to be the result of forum shopping.  There is no parallel

26  state court proceeding involving the same issues of state law.  And, as previously noted,

27  exercising jurisdiction over this action would prevent duplicative litigation in the event

28  that the Unexhausted Primary Policies are deemed exhausted.

Because Plaintiff pleads an actual controversy and the *Brillhart* factors weigh in favor of this Court exercising jurisdiction, Plaintiff has adequately stated a claim for a declaratory judgment action.  Therefore, Defendant's motion to dismiss or, in the alternative, to sever and stay the second claim for relief is **DENIED.**

## II.   Third Claim for Relief

The third claim for relief seeks a declaratory judgment that Defendant must defend Claims under the Umbrella Policies if the primary layer of insurance is exhausted.  (FAC ¶ 34.)  National Union argues that the third claim fails as a matter of law because the Umbrella Policies only apply to Suits, not Claims.  (Mot. at 7.)[5]  The Port contends that the policies' language supports its position.  (Reply at 7.)

Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation.[6]  *Powerine Oil Co. v. Super Ct.*, 118 P.3d 589, 597 (Cal. 2005).  The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties.  *Id.* at 598.  Such intent is to be inferred by looking "first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Travelers Cas. & Sur. Co. v. Am. Int'l Surplus Lines Ins. Co.*, 465 F. Supp. 2d 1005, 1012 (S.D. Cal. 2006).  When the contract language is not ambiguous, a court can resolve a motion to dismiss. *Tri-Union Seafoods, LLC*, 88 F. Supp. 3d at 1172.  However, if a contract provision is capable of two or more reasonable interpretations, considering the contract as a whole and the circumstances of the case, the provision is ambiguous, and the court should deny the motion to dismiss.

---

[5] National Union also asserts that the third claim for relief is moot until the Court resolves whether the Unexhausted Primary Policies are exhausted.  (Mot. at 2; Reply at 4.) Consistent with its reasoning in Part I.A, the Court rejects that argument.

[6] Because this action concerns issues of contract interpretation, a court can consider contracts incorporated into the complaint without converting the motion to dismiss into a motion for summary judgment. *Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1172 (S.D. Cal. 2015).

*Id.*; *Travelers Cas. & Sur. Co.*, 465 F. Supp. 2d at 1013; *see also Martinez v. Welk Grp., Inc.*, No. 09-cv-2883, 2011 WL 90313, at *6 (S.D. Cal. Jan. 11, 2011) ("Where the [contract] language 'leaves doubt as to parties' intent,' the motion to dismiss must be denied.").

### A. Contract Terms and the Parties' Arguments

The interpretation of the language in the Insuring Agreements and Limit of Liability sections of the four Umbrella Policies is disputed by the parties.  (FAC Exs. E-H.)  The relevant language is the same in each policy and is reproduced below.  The Insuring Agreements state as follows:

> I. COVERAGE.  [National Union agrees to] pay on behalf of the Insured that portion of the ultimate net loss in excess of the retained limit . . . , which the Insured shall become legally obligated to pay as damages for liability imposed upon the Insured by law, or liability assumed by the Insured under contract. . . .

> II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.  (The provisions of this Insuring Agreement apply solely to occurrences covered under this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured. . . . This Insuring Agreement shall also apply to occurrences not covered by any underlying insurance due to exhaustion of any aggregate limits by reason of any losses paid thereunder.)

> [National Union] shall:

> (a) defend any suit against the Insured . . . seeking recovery for damages . . . , but [National Union] shall have the right to make such investigation and negotiation and settlement of any claim or suit as may be deemed expedient by [National Union.]

(FAC Ex. E at 4.)

The Limit of Liability section states, in relevant part:

> (B) In the event of . . . exhaustion of the aggregate limits of liability under

said underlying insurance by reason of losses paid thereunder during this policy period, this policy shall . . . (2) continue in force as underlying insurance.

(FAC Ex. E at 5, 13.)

The Port argues that National Union, the insurer that drafted both the Primary and Umbrella Policies, demonstrated "explicit intent" to cover Claims in the Umbrella Policies in two specific clauses. (Opp'n at 8.) First, the Port contends that the provision that "[t]his Insuring Agreement shall also apply to occurrences not covered by any underlying insurance due to exhaustion" means the Umbrella Policies will cover occurrences that would have been covered under the Primary Policies had those policies not been exhausted. (*Id.* at 7-8.) And because "the [P]rimary [P]olicies . . . clearly cover [C]laims, the reasonable interpretation of this provision is that the excess coverage includes [C]laims." (*Id.* at 8.) Second, the Port argues that the language that "[i]n the event of . . . exhaustion . . . , this policy shall . . . continue in force as underlying insurance" means that "[i]n any matter that would have been covered by an underlying Primary Policy, but is not covered by reason of the Primary Policy's exhaustion, the Umbrella Policy is to provide the same coverage as the Primary Policy," namely that the Umbrella Policies will cover Claims. (*Id.* at 8.)

In contrast, National Union contends the Umbrella Policies only apply to Suits. It notes that Part I of the Insuring Agreement requires the insurer to pay sums that the insured is "legally obligated to pay as damages," which case law equates with Suits, not Claims. (Mot. at 7.) Furthermore, National Union argues that, under Part II(a), it is *required* to "defend any suit," but is granted the discretionary right to investigate and settle Claims. (Mot. at 8.) National Union objects to the Port's interpretation of the two provisions noted above. First, National Union contends that the introductory language in Part II of the Insuring Agreement ("This Insuring Agreement shall also apply to occurrences not covered by any underlying insurance due to exhaustion . . . .") means that the Umbrella Policies' defense obligations are "activated only when the underlying

1  insurance is exhausted," not that they provide the same coverage. (Mot. at 13.)  Second,

2  National Union argues that "phrase 'continue in force as underlying insurance' simply

3  means that the policy slips into the role of a primary policy, not that it suddenly adopts

4  the terms of the underlying primary policy." (Reply at 7.)

5     **B. Analysis**

6        The Court concludes that the language governing National Union's defense

7  obligations is ambiguous.  The policy reads that the insurer "shall defend any suit . . . ,

8  *but* [the insurer] shall have the right to [investigate, negotiate, and settle] any claim or

9  suit." (FAC Ex. E at 4 (emphasis added.))  The California Supreme Court found similar

10  language to mean that "insurers are required to defend a 'suit,' but have discretion to

11  investigate and settle a 'claim.'" *Foster-Gardner, Inc.*, 18 Cal. 4th at 863, 878, 880.[7]

12  *However*, that language is modified by the two sentences in parentheses that begin the

13  section.  Therein, the policy states that the umbrella insurance applies "to occurrences

14  covered under this policy but not covered by any underlying insurance. . . . This [policy]

15  shall also apply to occurrences not covered by any underlying insurance *due to*

16  *exhaustion*." (FAC Ex. E at 4 (emphasis added.))  It is the second sentence that conflicts

17  with the language about the insurer's defense duty and creates ambiguity that cannot be

18  resolved on a motion to dismiss.

19        Because words in a contract are to be interpreted in their ordinary and popular

20  sense, a layperson could interpret the second sentence in two possible ways, both

21  reasonable. *See Legacy Vulcan Corp. v. Super. Ct.*, 110 Cal. Rptr. 3d 795, 803 (Ct. App.

22  2d 2010).  On one hand, he could find that the Umbrella Policies cover occurrences that

23  would have been covered by the underlying insurance if the underlying insurance was not

24  exhausted by payment of its limits.  And because the Port attests, and National Union

25

26
_____

27  [7] The policy language in *Foster-Gardner* read:  "[T]he company shall have the right and

28  duty to defend any suit against the insured . . . and may make such investigation and
settlement of any claim or suit as it deems expedient." 18 Cal. 4th at 863.

does not dispute, that the underlying insurance covered both Suits and Claims arising from occurrences,[8] then a layperson could find that the Umbrella Policies must cover both Suits and Claims.  On the other hand, a layperson could find that the more specific language about the insurer's duty to defend Suits governs, and that the second sentence is temporal in nature indicating that coverage under the Umbrella Policies (and its specific terms) is triggered upon exhaustion of the underlying insurance.

The Court was unable to find any controlling authority construing the provisions in question in connection with an umbrella insurance policy.  The Court considered the various policy provisions discussed by the parties and other contract language in light of the rules governing contract interpretation, yet cannot say as a matter of law that the contracts' terms unambiguously preclude a defense duty for Claims.  The purpose of umbrella insurance is to "fill any gaps in coverage left open by the [underlying insurance.]"  *Wells Fargo Bank v. Cal. Ins. Guarantee Ass'n*, 45 Cal. Rptr. 2d 537, 539 n.2 (Ct. App. 1st 1995).  This objective seemingly supports the Port's position. Therefore, given the two possible layman's interpretations, the lack of controlling authority, and the general goal of umbrella insurance, there is "doubt as to the parties' intent" to include a duty to defend Claims under the Umbrella Policies.  *Martinez*, 2011 WL 90313, at *7.

Thus, the Court concludes that an actual controversy exists and, consistent with its reasoning above in Part I, it chooses to exercise jurisdiction over this declaratory judgment action.  The Court notes that, although it could not find California state court decisions interpreting the provisions in question, the Court expects discovery to develop evidence to aid in the Court's interpretation of the provisions such that the Court is not involved in a "needless determination of state laws."  *Robinson*, 394 F.3d at 672.

---

[8] Occurrences are events that lead to injuries or damages.  *See, e.g.*, FAC Ex. A at 18, Ex. C at 13, & Ex. E at 8.

1    Accordingly, Defendant's motion to dismiss or, in the alternative, to sever and stay the

2    third claim is **DENIED.**[9]

3    ## III.   Fourth Claim for Relief

4    The Port's fourth claim for relief alleges breaches of National Union's contractual

5    duties to (1) pay or reimburse for legal obligations arising out of Claims and Suits and (2)

6    defend the Port in Claims and Suits under the Unexhausted Primary Policies. (FAC ¶

7    39.)  To state a claim for breach of contract under California law, a plaintiff must allege:

8    (1) the existence of a contract; (2) its performance or excuse for nonperformance; (3)

9    defendant's breach of the contract; and (4) resulting damage to plaintiff.  *Tri-Union*

10   *Seafoods*, 88 F. Supp. 3d at 1173.  In determining whether a plaintiff has stated a claim

11   for breach of an insurance contract, a court must compare the allegations of the complaint

12   with the terms of the contract.  *Mortazavi v. Fed. Ins. Co.*, No. 13-cv-3141, 2014 WL

13   940328, at *2 (S.D. Cal. Mar. 11, 2014).

14   National Union does not dispute (1) the existence of a contract or (2) the Port's

15   performance or excuse for nonperformance.  Instead, it appears that National Union

16   contests the Port's pleading of breach and damages.  National Union asserts that the FAC

17   admits that it has not breached its duty to defend because it agreed to continue defending

18   Suits and Claims pending judicial resolution of the exhaustion issue. (Mot. at 10, Ex. 1.)

19   It further argues that the Port's Opposition admits that National Union has paid some

20   defense costs and that the FAC does not allege any particular facts about unpaid defense

21   costs. (Mot. at 10; Reply at 8.)[10]

22

23

24   [9] National Union is free to renew its arguments at the summary judgment stage if facts

25   developed in discovery support its legal theories.  *See, e.g., Travelers Indem. Co. of*

26   *Conn. v. Walker & Zanger, Inc.*, 221 F. Supp. 2d 1224 (S.D. Cal. 2002) (considering
     whether duty to defend exists on motion for summary judgment).

27   [10] Furthermore, Defendant repeats its argument that this claim for relief is moot. (Mot. at
     10.)  The Court rejects this argument.  *See supra* Part I.A.

28

1    Taking all factual allegations as true and construing them in the light most

2  favorable to Plaintiff, the Court concludes that Plaintiff has adequately pleaded a breach

3  of contract.  The Port alleged that National Union promised to defend and indemnify the

4  Port against Suits and Claims under the Unexhausted Primary Policies.  (FAC ¶ 9.)  The

5  terms of the Unexhausted Primary Policies do not appear to rebut that allegation.  (FAC

6  Ex. A at 15 & Ex. B at 45.)  The Port also alleged that it tendered the Suits and Claims to

7  National Union, which National Union initially agreed to defend under the Unexhausted

8  Primary Policies.  (FAC ¶¶ 11, 12.)  Subsequently, National Union informed the Port that

9  it considered the Policies exhausted and would cease defending the Port in the Suits and

10  Claims.  (FAC ¶ 13.)  These allegations are adequate to plead breach.  *See Travelers*

11  *Indem. Co. of Conn.*, 221 F. Supp. 2d at 1229-30 ("The duty to defend arises immediately

12  upon the insured's tender of a defense. . . [and] continues until the underlying lawsuit is

13  concluded or until it has been shown that there is *no* potential for coverage." (emphasis in

14  original)).

15    As a result of National Union's actions, the Port incurred its own defense fees and

16  costs, specifically unreimbursed attorneys' fees, investigative costs, and expenses, as well

17  as "other foreseeable economic losses."  (FAC ¶18, 40.)  Thus, the Port has alleged that it

18  has been injured as a result of Defendant's breach.  *See StreamCast Networks, Inc. v.*

19  *IBIS LLC*, No. CV 05-04239, 2006 WL 5720345, at *5 (C.D. Cal. May 2, 2006) ("Under

20  Rule 8, the fact of damage—and the type of damage—can be alleged in conclusory

21  terms.").  Therefore, Defendant's motion to dismiss the fourth claim for relief is

22  **DENIED.**  As explained below, the Court also **DENIES** the motion to sever and stay the

23  fourth claim.

24  **IV.    Fifth Claim for Relief**

25    The Port's fifth claim for relief alleges bad faith and breach of the implied

26  covenant of good faith and fair dealing.  "In the insurance context, the primary test of

27  whether an insurer breaches the implied covenant of good faith and fair dealing is

28  whether the insurer withheld payment of an insured's claim unreasonably and in bad

faith. . . . [T]he insurer must engage in a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Mortazavi*, 2014 WL 940328, at *3 (citing other sources). Bad faith is usually a fact question. *Id.*

National Union argues that there is no basis for a bad faith claim because it continues to defend the Port in Suits and Claims subject to the resolution of the exhaustion issue. (Mot. at 12, Ex. 1.)  It also asserts that the Port only alleges legal conclusions that are devoid of factual content. (*Id.*)[11]  The Port counters that it has alleged sufficient facts to make out a bad faith claim. (Opp'n at 12-13.)

The Court agrees with the Port and finds that it has sufficiently alleged a breach of the implied covenant of good faith and fair dealing.  The Port alleges that National Union abandoned the Port's defense after unilaterally assigning defense costs as indemnity payments and asserting that the Policies were exhausted.  National Union has provided no authority to support its position that its later decision to provide a defense pending resolution of the Policies' exhaustion somehow moots the legal effect of its prior conduct.

The truth of the Port's allegations is a question of fact inappropriate for resolution on a motion to dismiss.  *See McGregor v. Paul Revere Life Ins. Co.*, 92 F. App'x 412, 416 (9th Cir. 2004) (finding that reasonableness of insurer's conduct in denying coverage was fact question).  Therefore, Defendant's motion to dismiss the fifth claim for relief is **DENIED.**  The Court also **DENIES** the motion to sever and stay the fifth claim, as explained below.

## V.    Motion to Sever and Stay

National Union argues that in the alternative to dismissal, the second through fifth claims for relief should be severed and stayed pending resolution of whether the

---

[11] National Union again repeats its argument that the fifth claim for relief is moot pending resolution of the first claim. (Mot. at 6.)  The Court rejects this argument. *See supra* Part I.A.

1  Unexhausted Primary Policies are exhausted.  A court, in its broad discretion, may sever

2  and stay claims.  Fed. R. Civ. P. 21, 42(b); *Landis v. N. Am. Co.*, 299 U.S. 254 (1936)

3  ("[T]he power to stay proceedings is incidental to the power inherent in every court to

4  control the disposition of the causes on its docket with economy of time and effort for

5  itself, for counsel, and for litigants.").[12]

6         The Court has considered the relevant factors and declines to sever and stay part of

7  this action.  The Court has already explained that it will exercise jurisdiction over the two

8  declaratory relief actions related to the Umbrella Policies.  *See supra* Part I.B, II.B.  The

9  same reasoning applies to the Port's claims for breach of contract and breach of the

10 covenant of good faith and fair dealing.  Judicial economy would not be served by

11 severance or stay because if the Unexhausted Primary Policies are exhausted, as National

12 Union asserts, the second through fifth claims will have to be decided.  Severance or stay

13 would delay the progression of this case.  Moreover, there is no risk of prejudice to either

14 party because it does not appear that the issues in this case overlap with the factual and

15 legal issues in the underlying Suits and Claims.  Therefore, the Court exercises its

16 discretion and **DENIES** Defendant's Motion to Sever and Stay the second through fifth

17 claims for relief.

18 ///

19

20

21 [12] In deciding whether to sever a claim, the court considers the following factors:  "(1)

22 whether the claims arise out of the same transaction or occurrence; (2) whether the claims
   present some common questions of law or fact; (3) whether settlement of the claims or

23 judicial economy would be facilitated; (4) whether prejudice would be avoided if
   severance were granted; and (5) whether different witnesses and documentary proof are

24 required for the separate claims."  *Anticancer, Inc. v. Pfizer, Inc.*, No. 11-cv-107, 2012

25 WL 1019796, at *1 (S.D. Cal. Mar. 26, 2012).  In determining whether to grant a stay, a
   court considers: (1) "possible damage which may result from the granting of a stay," (2)

26 "the hardship or inequity which a party may suffer in being required to go forward," and

27 (3) "the orderly course of justice measured in terms of the simplifying or complicating of
   issues, proof, and questions of law which could be expected to result from a stay."

28 *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

1

**CONCLUSION**

2        For the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss

3  and Motion to Sever and Stay Certain Claims.

4        **IT IS SO ORDERED.**

5

6  DATED: 7/06   , 2016

7                                    HON. ROGER T. BENITEZ
                                     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28