UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO UNIFIED PORT DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., as successor-in-interest to LANDMARK INSURANCE COMPANY,<br><br>Defendant. | Case No.: 15cv1401 BEN (MDD)<br><br>**ORDER:**<br><br>**(1) DENYING NATIONAL UNION'S FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(2) GRANTING PORT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(3) GRANTING NATIONAL UNION'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Docket Nos. 33, 34, 47.] |

Presently before the Court is Plaintiff San Diego Unified Port District ("Port"), a California public entity, and Defendant National Union Fire Insurance Company of

1

Pittsburgh, PA[1] ("National Union"). This case arises from a disagreement between the Port and National Union, one of its liability insurance companies.

## FACTUAL AND PROCEDURAL HISTORY

### I. Background[2]

Defendant National Union, successor-in-interest to Landmark Insurance Company ("Landmark") sold the Port both *primary liability* and *umbrella liability* insurance policies, promising to defend and indemnify the Port against certain property damage liability claims or lawsuits. National Union issued four primary policies to the Port.[3] National Union also sold the Port "the first layer of liability insurance directly above the Unexhausted Primary Policies and Exhausted Primary Policies in the form of" umbrella insurance policies. Coverage under the four Umbrella Policies is triggered once the Primary Policies are exhausted.

According to the First Amended Complaint ("FAC"), the Port tendered, and National Union agreed to provide a defense under the Unexhausted Primary Policies to certain claims ("*Claims*") and lawsuits ("*Suits*") asserted against the Port.[4] Subsequently, National Union informed the Port that it "unilaterally would be assigning payments for one of the Port's defense experts to [National Union's] indemnity obligation against the

---

[1] On January 1, 2012, Landmark merged into National Union, with National Union as the surviving company, this Order refers to Defendant as National Union, even though the FAC makes allegations about Landmark.

[2] Plaintiffs' objections to the evidence are **OVERRULED** to the extent they are inconsistent with this Order.

[3] The parties agree that two of the primary policies are exhausted. (Policy Nos. SMP 8002308 & GLA 5000574.) There are two other primary policies, which the Port contends are not exhausted. (Policy Nos. GLA 5000110 and SMP 8002932.)

[4] The California Supreme Court has explained that a "*suit*" means a "civil action commenced by filing a complaint," and "[a]nything short of this is a 'claim.'" *Foster-Gardner, Inc. v. Nat'l Union Ins. Co.*, 18 Cal. 4th 857, 878 (1998). A "*claim*" may be "a demand for payment communicated in a letter, or a document filed to protect an injured party's right to sue a governmental entity, or the document used to initiate a wide variety of administrative proceedings." (*Id.* at 879.)

2

Unexhausted Primary Policies' limits." National Union then tendered the asserted remaining policy limits to the Port and informed the Port that "[National Union] considered the Unexhausted Primary Policies to be exhausted and that it would cease defending the Port in the *Claims* and *Suits*." National Union did not seek a judicial determination concerning exhaustion.

The Port contested National Union's assertion that the Unexhausted Primary Policies were exhausted. The Port also asserted that even if the Unexhausted Primary Policies were exhausted, "the terms of the Umbrella Policies would require National Union to drop down and defend the Port in the *Claims* and *Suits*."

National Union "repeatedly disputed" having a defense obligation under the Umbrella Policies. But on September 15, 2015, between the filing of the original complaint and the operative FAC, National Union acknowledged through a letter from counsel that it "has a defense obligation to defend [S]uits in accordance with the terms of its [U]mbrella Policies."[5] As a result of National Union's failure to defend, the Port incurred its own defense costs.

The Port commenced the present action on June 25, 2015, and subsequently filed the FAC on November 20, 2015, asserting five causes of action. On December 14, 2015, National Union filed a Motion to Dismiss, Sever and Stay which was denied. On July 20, 2016, National Union submitted its Answer to the Port's FAC. The Port seeks a determination that the Primary Policies have not been exhausted as claimed by National Union and that it should have continued defending the Port until the Court or the Port agreed that the remaining two Primary Policies were exhausted. National Union disagrees with the Port's claims, contends that it has reimbursed all accrued defense fees and costs, and it maintains its actions have been both reasonable and correct. National

---

[5] Plaintiff referenced the September 15, 2015 letter in the FAC but failed to attach it. Defendant attached the letter to its Motion to Dismiss. Plaintiff did not dispute the authenticity of the September 15, 2015 letter in its Opposition.

3

Union also believes that the Port failed to cooperate as required under the policies because the Port withheld information and deprived National Union of the right to participate in the settlement of certain lawsuits.

The parties have filed three cross-motions for summary judgment. (Doc. Nos. 33, 34, 47.)

## II. Cross-motions for Summary Judgment[6]

### A. *National Union's Motion for Partial Summary Judgment on the Third Cause of Action*.

National Union moved for partial summary judgment of the third cause of action in the FAC. This motion requests the Court to dismiss the third cause of action in the FAC which seeks a judicial declaration that the Port is entitled to a defense of *Claims* under the Umbrella Policies if the Primary Policies are exhausted and find that the Umbrella Policies do not cover *Claims*. (Doc. No. 34 at 2.)

Port disputes National Union's position arguing the only reasonable interpretation of the policies support that the *Claims* coverage provided at the primary level was intended to continue at the excess/umbrella level. Alternatively, interpretation of the scope of coverage creates an ambiguity that must be resolved in favor of the Port. (Doc. No. 38 at 3.)

### B. *Port's Motion for Partial Summary Judgment on the Second and Third Cause of Actions*.

Port moved for partial summary judgment of the second and third causes of action in the FAC. This motion seeks judicial declarations that National Union must defend and indemnify the Port against *Suits* and *Claims* under Umbrella Policies 'UMB-6000046,' 'UMB-6000116,' and 'UMB-6000145' immediately upon exhaustion of the underlying Primary Policies. (Doc. No. 34 at 2.)

---

[6] The Court finds the motions fully briefed and suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1.

4

National Union disputes the Port's argument as to the second and third causes of action asserting the Port's interpretation disregards proper contract interpretation; ignores policy terms, conditions, and endorsements and ultimately seeks the benefits of umbrella policy protections before those protections have been triggered. (Doc. No. 39 at 7-10.)

C. *National Union's Second Motion for Partial Summary Judgment on the Second Cause of Action.*

National Union moved for partial summary judgment of the second cause of action in the FAC. This motion seeks a judicial declaration that 'horizontal exhaustion' of all the primary policies is required before the Umbrella Policies are triggered and that the 1985 Umbrella Policy excludes coverage under the absolute pollution exclusion. (Doc. No. 47 at 2.)

Port disputes National Union's position because the policy "endorsement and declarations confirm the AIG excess/umbrella policies to be specific excess, they are obligated to cover the District immediately upon the exhaustion of the identified underlying AIG primary policy." (Doc. No. 48 at 8.)

**STANDARD OF REVIEW**

I. **Summary Judgment**

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (*Id.* at 248.)

A moving party bears the initial burden of showing there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that

party's case, and on which the party will bear the burden of proof at trial. (*Id.*) The burden then shifts to the non-moving party to show that there is a genuine issue for trial. (*Id.*)

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. As a general rule, the "mere existence of a scintilla of evidence" will be insufficient to raise a genuine issue of material fact; there must be evidence on which the jury could reasonably find for the non-moving party. (*Id.* at 252.)

A moving party is only entitled to summary judgment where it has shown that there are no genuine issues of material fact, even if the nonmoving party does not offer materials in support of its opposition. *Henry v. Gill Indus. Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Summary judgment is inappropriate where the movant's papers are insufficient to support that motion or on their face reveal a genuine issue of material fact. *See (Id.)* "The filing of cross-motions for summary judgment 'does not necessarily mean that there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other.'" *Hahn v. Massage Envy Franchising, LLC*, No. 12cv153, 2014 WL 5100220, at *3 (S.D. Cal. Sept. 25, 2014) (citation omitted); *see Halbert v. Cnty. of S.D.*, No. 07cv1607, 2010 WL 1292163, at *6 (S.D. Cal. Mar. 30, 2010).

The Court's subject matter jurisdiction over this case is based upon diversity jurisdiction under 28 U.S.C. § 1332(a). Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies state substantive law and federal procedural law. When addressing Plaintiffs' and Defendants' claims, the Court will, therefore, apply California Law.

///
///
///

## II. California Insurance Law

California law obligates an insurer to defend the insured when the facts alleged in the complaint create a potential for coverage. *Scottsdale Ins. Co. v. MV. Transp.*, 36 Cal. 4th 643, 654 (2005). However, in evaluating the duty to defend, the insurer may also consider facts outside those alleged in the complaint. (*Id.*) "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). Thus, [i]n a declaratory relief action to determine the duty to defend, 'the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *State Farm v. Super. Ct.*, 164 Cal. App. 4th 1076, 1081 (1993).

The interpretation of the insurance policy is governed by the ordinary rules of contract interpretation. *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999). The fundamental goal of interpreting an insurance policy is to ascertain the parties' mutual intentions. *Vons Cos., Inc. v. United States Fire Ins. Co.*, 78 Cal. 4th 52, 58 (2000). Where possible, those intentions should be inferred solely from the policy's written terms. *AIU Ins. Co. v. FMC Corp.*, 51 Cal. 3d 807, 822 (1990). Thus, policy language that is clear and explicit governs. (*Id.*)

A policy term is ambiguous when it is susceptible to two or more reasonable constructions. *EMMI Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 470 (2004). Courts, therefore, will not adopt "a strained or absurd interpretation in order to create an ambiguity where none exists." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th 854, 867 (1993). Additionally, ambiguity cannot be found in the abstract. (*Id.*) Rather, the "proper question is whether the word is ambiguous in the context of this policy and the circumstances of this case." (*Id.* at 868 [emphasis in original]). The "policy 'must be construed as an entirety, with each clause lending meaning to the other.'" *Carmel Dev. Co. v. RLI Ins. Co.*, 126 Cal. App. 4th 502, 507

(2005). "Further, 'where the insuring clause of a policy clearly covers a risk, and a subsequent limiting clause does not clearly exclude it, the risk will be deemed to be covered by the policy.'" *Kilroy Indus. v. United Pac. Ins. Co.*, 608 F. Supp. 847, 855 (C.D. Cal. 1985) *citing Holz Rubber*, 14 Cal. 3d at 37. Where an ambiguity exists, however, it should be resolved against the insurer. *EMMI, Inc.*, 32 Cal. 4th at 470-71 (citing *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 763 (2001)).

## DISCUSSION

### I. National Union's Motion for Partial Summary Judgment on Port's Third Cause of Action.

The third claim for relief seeks a declaratory judgment that National Union must defend *Claims* under the Umbrella Policies if the primary layer of insurance is exhausted. (FAC ¶ 34.) National Union contends that it is entitled to partial summary judgment on Port's third cause of action because the Umbrella Policies only apply to "*Suits*," not non-litigated "*Claims*." (Doc. No. 33-1 at 7.) The Port opposes the motion and contends that the policies' language supports its position. (Doc. No. 38.)

Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. *Powerine Oil Co. v. Super Ct.*, 118 P.3d 589, 597 (Cal. 2005). The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties. (*Id.* at 598.) Such intent is to be inferred by looking "first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Travelers Cas. & Sur. Co. v. Am. Int'l Surplus Lines. Ins. Co.*, 465 F.Supp.2d 1005, 1012 (S.D. Cal. 2006).

When the contract language is not ambiguous, a court can resolve a motion to dismiss. *Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F.Supp.3d 1156, 1172 (S.D. Cal. 2015). However, if a contract provision is capable of two or more reasonable interpretations, considering the contract as a whole and the circumstances of the case, the provision is ambiguous, and the court should deny the motion to dismiss. (*Id.*); *Travelers Cas. & Sur. Co.*, 465 F.Supp.2d at 1013; *see also Martinez v. Welk Grp.*

8

*Inc.*, No. 09-cv-2883, 2011 WL 90313, at *6 (S.D. Cal. Jan. 11, 2011) ("Where the [contract] language 'leaves doubt as to parties' intent,' the motion to dismiss must be denied.").

Under California insurance law, as it relates to commercial general liability policies, "damages" are understood to refer, in general, to courtroom litigation. The duty to defend a "*Suit*" seeking "damages" under pre-1986 CGL policies is restricted to civil actions prosecuted in a court, initiated by the filing of a complaint, and does not include "*Claims*," which can denote proceedings conducted by administrative agencies under environmental statutes. Likewise, the duty to indemnify for " 'all sums that the insured becomes legally obligated to pay as damages'" (*Certain Underwriters at Lloyd's of London v. Super. Ct.*, 24 Cal.4th 945, 959-64 (2001)) in the same standard primary policies is limited to money ordered by a court, and does not include expenses such as may be incurred in responding to administrative agency orders. *CDM Investors v. Travelers Cas. & Sur. Co.*, 139 Cal.App.4th 1251, 1264-66 (2006).

However, with the California Supreme Courts decision in *Powerine II*, the duty to indemnify for " 'all sums that the insured becomes legally obligated to pay as damages'" was expanded. The language in the policy at issue in *Powerine II* provided the following indemnity language:

> "The Company hereby agrees . . . to indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability . . . imposed upon the Insured by law . . . for damages, direct or consequential, and expenses, all as more fully defined by the term 'ultimate net loss' on account of: . . . property damage. . . . "

*Powerine Oil Co., Inc. v. Super Ct.*, 37 Cal.4th 377, (2005).

In turn, ultimate net loss was defined as:

> "the total sum which the Insured, . . . become[s] obligated to pay by reason of . . . property damage . . . either through adjudication or compromise and shall also include . . . law costs . . . for litigation, settlement, adjustment and investigation of claims and suits which, are paid as a consequence of any occurrence covered hereunder . . . . "

(*Id.*)

The *Powerine II* court distinguished the scope of coverage afforded by the excess/umbrella policy from the standard CGL policy based on the use of the terms "expenses," "compromise," and "claims" in the excess/umbrella policy.

First, based on the addition of the term "expenses" in the coverage grant of the excess/umbrella policy, the *Powerine II* court distinguished the scope of the standard CGL policy which only provided coverage for damages. "By supplementing "damages" with "expenses,"[7] the umbrella policy have created a category of indemnifiable costs separate and independent from "damages" and has thus extended its coverage beyond the limitation imposed were the term "damages" used alone.

Second, based on the use of the word "compromise" in the ultimate net loss provision as an alternative to the word "adjudication," the *Powerine II* court concluded that a compromise may be reached before a lawsuit is ever filed. Because the use of the word "compromise" was not limited to a judicially approved, sanctioned, or ordered compromise, there was no basis for limiting compromises to the sphere of civil litigation.

Finally, the excess/umbrella policy contained the word "*claims*" in addition to the word "*suits*" in the ultimate net loss provision. Embracing the *Foster-Gardner* distinction between a *suit* and a *claim* – "[a] '*claim*' is not a '*suit*'[8] – the *Powerine II* court necessarily found that the use of the word "*claim*" in the excess/umbrella policy was designed to encompass administrative proceedings.

Based on the policy language, the *Powerine II* court concluded that

---

[7] As support for this interpretation, the *Powerine II* court relied on the holding in *Powerine I*, wherein the Supreme Court determined that "expenses" referred to costs "required by an administrative agency pursuant to an environmental statute." *Powerine I*, 24 Cal.4th at 966.

[8] Specifically, the *Foster-Gardner* court held that a "*claim*" could be "the document used to initiate a wide variety of administrative proceedings." *Foster-Gardner*, 18 Cal. 4th 879.

> "the straightforward and unambiguous meaning of the coverage provision here, with its attendant reference to ultimate net loss, interpreted in its ordinary and popular sense, expressly extends coverage beyond "damages" resulting from a lawsuit to embrace also those costs incurred in responding to administrative-agency orders requiring response, cleanup, and abatement of environmental pollution imposed outside the context of a lawsuit. The policies commit Central National to indemnify for "expenses" and "damages," which arise in the context of "adjudication" or "compromise," and as "*claims*" and "*suits*," all of which have distinct meanings, and are not limited to money ordered by a court in a lawsuit.
> The care these policies took to list all of these different kinds of costs "indicates that the insurers' differing rights and obligations with respect to '*suits*' and '*claims*' [as well as "expenses" and "damages"] were deliberately and intentionally articulated in the policies. [Citation.]"
> Where cleanup and abatement costs are incurred "because of" "property damage," they are thus covered occurrences under the policies. The purposeful inclusion of both the words "expenses" and "*claims*" indicates the discernible intent that the insurer be responsible in addition to the costs ordered by a court, for the costs incurred in responding to environmental orders initiated by administrative agencies."

(*Id.*)

Looking to the situation at hand, National Union argues the insuring agreement in the Umbrella Policies on their face apply to sums the insured is obligated to pay "as damages." (Doc. No. 33 at 27.) Thus, National Union is entitled to summary judgment on the third cause of action because the Umbrella Policies cover "*Suits*", but not non-litigated "*Claims*." (*Id.*) In contrast, the Port requests the Court follow the reasoning in *Powerine II* and find that the Umbrella Policies provide broader coverage than the underlying insurance which includes the indemnity and defense of *claims*. (*Id.*) Alternatively, affirm this Courts July 6, 2016, order (Doc. No. 20) and conclude the

11

15cv1401 BEN (MDD)

language governing National Union's defense obligations remains ambiguous thereby requiring the Umbrella Policies to drop down and provide a defense to "*Claims*."[9] (Id.)

The Court finds itself in an unusual position in that whichever decision the Court makes in this matter, the result is the same. If it follows the precedent set in *Powerine II*, the defense obligations of the Umbrella Policies is expanded to include indemnity and defense for *claims*. Alternatively, if it finds that an ambiguity remains in the Umbrella Policy language as it did in its prior order, the result is the same. National Union must provide indemnity and defense for *claims* under the Umbrella Policies.

Having considered the extensive briefing provided by the parties, controlling authority construing the provisions in question, other contract language in light of the rules governing contract interpretation, and the lack of any controlling authority construing these provisions in connection with an umbrella insurance policy, the Court finds the Umbrella Policy language regarding coverage of "*claims*" susceptible to multiple interpretations. Due to the ambiguity, the Umbrella Policy shall be interpreted to include indemnity and defense coverage for *claims* as understood by the insured the [Port].

The Court **DENIES** National Union's motion for summary judgment on the third cause of action of the FAC.

///

///

---

[9] On one hand, he could find that the Umbrella Policies cover occurrences that would have been covered by the underlying insurance if the underlying insurance was not exhausted by payment of its limits. And because the Port attests, and National Union does not dispute, that the underlying insurance covered both *Suits* and *Claims* arising from occurrences, then a layperson could find that the Umbrella Policies must cover both *Suits* and *Claims*. On the other hand, a layperson could find that the more specific language about the insurer's duty to defend *Suits* governs, and the the second sentence is temporal in nature indicating that coverage under the Umbrella Policies (and its specific terms) is triggered upon exhaustion of the underlying insurance. (Doc. No. 20.)

## II. Port's Motion for Partial Summary Judgment on the *Second* and *Third* Cause of Action.

### A. *Port's Second Cause of Action*.

The Port seeks a declaratory judgment that National Union must defend *Suits* under the Umbrella Policies in the event of exhaustion of the primary layer of insurance. (FAC ¶ 30.) Despite National Union "repeatedly disputing" it had such an obligation, in a letter dated September 15, 2015, attorney Peter L. Garchie, of Lewis Brisbois Bisgaard & Smith LLP (counsel for National Union), conceded

> "Landmark has a defense obligation to defend suits in accordance with the terms of its umbrella policies located above the Landmark primary insurance policies. For any exhausted Landmark primary insurance policy, the Port can expect Landmark to assume the defense of any pending suits by the appropriate umbrella policy."

(FAC ¶ 16; Doc. No. 15-1.)

Having previously considered this issue when it addressed National Union's Motion to Dismiss, this Court finds, in accordance with National Union's September 15, 2015, letter, National Union "has a defense obligation to defend [S]uits in accordance with the terms of its [U]mbrella Policies." (*Id.*) Thus, the Court **GRANTS** Ports motion for summary judgment as to the second cause of action.

### B. *Port's Third Cause of Action*.

The third cause of action is defined and analyzed above in Section I. The Port seeks a declaratory judgment that National Union is required to defend *Claims* under the Umbrella Policies if the primary layer of insurance is exhausted. (FAC ¶ 34.) National Union contests Ports position and assert's the Umbrella Policies cover "*Suits*," but not non-litigated "*Claims*." (Doc. No. 33-1 at 7.)

Having considered the parties arguments *supra*, the Court found the Umbrella Policy language ambiguous requiring it be interpreted to include indemnity and defense coverage for *claims* as understood by the insured [Port].

1    The Court, therefore, **GRANTS** Port's motion for summary judgment as to causes
2    of action two and three.
3    **III.    National Union's Second Motion for Partial Summary Judgment.**
4         The second claim for relief seeks a declaratory judgment that National Union must
5    defend *Suits* under the Umbrella Policies if the primary layer of insurance is exhausted.
6    (FAC ¶ 34.) National Union contends that it is entitled to partial summary judgment on
7    Port's second cause of action because the "*Suits*," being environmental matters with a
8    "*continuous trigger*" require that all the Primary Policies issued to the Port (that are still
9    providing a defense to *Suits*, of which there are two: GLA-5000110 and SMP-8002932)
10   be exhausted before a defense under the Umbrella Policies will arise.
11       In the event that the Court found National Union's first argument unavailing,
12   National Union asserts the Port also admitted that under the "1985 'Absolute Pollution
13   Exclusion,'" coverage under the Umbrella Policies is entirely excluded. (Doc. No. 47 at
14   2-3.) The Port opposes the motion and contends the policies' language supports its
15   position. (Doc. No. 48.)
16       "'Vertical exhaustion' means that the policy limits under just one particular
17   primary policy must be exhausted before the excess policy kicks in. By contrast,
18   'horizontal exhaustion' means that the limits under all applicable primary policies must
19   be exhausted before the excess policy kicks in." *State v. Cont'l Ins. Co.*, 88 Cal. Rptr. 3d
20   288, 306 (4th Dist. 2009). Vertical exhaustion applies where "coverage attaches under an
21   excess policy when the limits of a specifically scheduled underlying policy are exhausted
22   and the language of the excess policy provides that it shall be excess only to that specific
23   underlying policy." *Cmty. Redev. Agency v. Aetna Cas. & Sur. Co.*, 50 Cal. App. 4th
24   329, 339-40; *see also Cont'l Ins. Co.*, 88 Cal. Rptr. 3d at 306 (As a general rule,
25   California requires horizontal exhaustion. Vertical exhaustion applies if, and only if, the
26   excess policy provides that it is excess to a specified primary policy. This is true even
27   when the primary policies apply to different policy periods." (*citations omitted*)).
28

In its motion for summary judgment, National Union urges the Court to follow California's general approach of "horizontal exhaustion." National Union contends that the Umbrella Policies are not triggered and do not apply to the *Suits* until all of the primary insurance policies defending the Port are exhausted. (Doc. No. 47-1 at 2.) California law is unequivocal that under these circumstances, complete horizontal exhaustion is required, rather than vertical exhaustion as the Port argues. (*Id.* at 2.) Until all of these primary policies are exhausted, the Umbrella Policies are not obligated to provide the Port with a defense or indemnity of the *Suits*. (*Id.*)

The Port contests National Union's position arguing that National Union's excess/umbrella policies have specific excess language found in an endorsement that promises the excess coverage will attach immediately upon the exhaustion of the specifically identified underlying primary policy. (Doc. No. 48 at 1.) Further, California law requires that the terms of an endorsement control over any inconsistent terms in the policy form. (*Id.* at 3.) This issue turns solely on the policy language and not whether there are other potentially applicable primary policies in other policy periods before or after the policies at issue.

In this case, the Port argues that each of the three excess Umbrella Policies at issue contain endorsement and declarations language that expressly and directly states the coverage is excess to a specifically identified AIG primary policy, thereby making it specific excess coverage. The language to which the Port refers is from the endorsement which states "[i]n the event of . . . exhaustion of the aggregate limits of liability under said underlying insurances . . . this policy shall . . . (2) in the event of exhaustion, continue in force as underlying insurance." (*Id.* at 13.) The Port argues this "confirms this common-sense interpretation by specifically addressing what will happen upon exhaustion of the immediately underlying policy." (*Id.*) The Court disagrees because it is not consistent with the fact that the Endorsement does not remove from the Umbrella Policy that language "and the applicable limits of any other underlying insurance

15

providing coverage to the Insured." (Doc. No. 49 at 4.) This alone indicates horizontal exhaustion is appropriate under the facts of this case.

Recently, the Port and National Union both provided supplemental authority in support of their perspective arguments. (Doc. Nos. 109, 110, 111.) Having reviewed the filings, the Court finds National Union's submission of *Montrose Chemical Corp. v. Superior Court* ("Montrose") beneficial. In Montrose, some excess insurance policies had been triggered by the exhaustion of only the underlying scheduled comprehensive general liability insurance policies for the same policy year rather than by the exhaustion of all available insurance for the insured's environmental liability policies. The court found the insured was not entitled to elective stacking as to its entire policy portfolio because he did not show that each policy could be read in this fashion, nor that all comparable policies had been exhausted. *See Montrose,* 14 Cal.App.5th at 1312.

The Port is attempting to do much the same here by arguing that vertical exhaustion should be applied to the exhausted primary policies in this case. As stated previously, the general approach in California is absent a specific language in the policy to the contrary, horizontal exhaustion is applied in longtail environmental injuries such as this matter. The Port argues that *Montrose* has recently been taken up for appeal by the California Supreme Court, so its holding is only persuasive. However, this Court notes that in diversity cases such as the case at bar, this Court applies federal procedural law and state substantive law of the highest court of the state. Since the Supreme Court of California has yet to decide the Montrose appeal, this Court must interpret how it believes the State Supreme Court will hold when it enters its decision. After a thorough review of the facts of the case along with the motion for summary judgment, the Court finds that horizontal exhaustion is required and should be applied in this matter. Since the Court finds determines that horizontal exhaustion should be applied, the Court need not address National Union's argument regarding the "absolute pollution exclusion."

The Court, therefore, **GRANTS** National Union's motion for summary judgment as to cause of action two.

## CONCLUSION

For the reasons set forth above, National Union's First Motion for Partial Summary Judgment is **DENIED**, Port's Motion's for Partial Summary Judgment is **GRANTED**, and National Union's Second Motion for Partial Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

DATED: March 29, 2018

HON. ROGER T. BENITEZ
United States District Court Judge