1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8                   SOUTHERN DISTRICT OF CALIFORNIA
9

| | |
|---|---|
| SAN DIEGO UNIFIED PORT DISTRICT,<br><br>                                   Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., as successor-in-interest to LANDMARK INSURANCE COMPANY,<br><br>                                   Defendant. | Case No.:  15cv1401 BEN (MDD)<br><br>**ORDER:**<br><br>**(4) GRANTING PORT'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(5) DENYING NATIONAL UNION'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br><br>[Docket Nos. 62, 63.] |

        Presently before the Court is Plaintiff San Diego Unified Port District ("Port"), a California public entity, and Defendant National Union Fire Insurance Company of Pittsburgh, PA[1] ("National Union").  This case arises from a disagreement between the Port and National Union, one of its liability insurance companies.

_____

[1] On January 1, 2012, Landmark merged into National Union, with National Union as the surviving company, this Order refers to Defendant as National Union, even though the FAC makes allegations about Landmark.

# FACTUAL AND PROCEDURAL HISTORY

## I. Background[2]

Defendant National Union, successor-in-interest to Landmark Insurance Company ("Landmark") sold the Port both *primary liability* and *umbrella liability* insurance policies, promising to defend and indemnify the Port against certain property damage liability claims or lawsuits.  National Union issued four primary policies to the Port.[3] National Union also sold the Port "the first layer of liability insurance directly above the Unexhausted Primary Policies and Exhausted Primary Policies in the form of" umbrella insurance policies.  Coverage under the four Umbrella Policies is triggered once the Primary Policies are exhausted.

According to the First Amended Complaint ("FAC"), the Port tendered, and National Union agreed to provide a defense under the Unexhausted Primary Policies to certain claims ("*Claims*") and lawsuits ("*Suits*") asserted against the Port.[4]  Subsequently, National Union informed the Port that it "unilaterally would be assigning payments for one of the Port's defense experts to [National Union's] indemnity obligation against the Unexhausted Primary Policies' limits."  National Union then tendered the asserted remaining policy limits to the Port and informed the Port "[National Union] considered the Unexhausted Primary Policies to be exhausted and that it would cease defending the

---

[2] Plaintiffs' objections to the evidence are **OVERRULED** to the extent they are inconsistent with this Order.

[3] The parties agree that two of the primary policies are exhausted. (Policy Nos. SMP 8002308 & GLA 5000574.) There are two other primary policies, which the Port contends are not exhausted. (Policy Nos. GLA 5000110 and SMP 8002932.)

[4] The California Supreme Court has explained that a "*suit*" means a "civil action commenced by filing a complaint," and "[a]nything short of this is a 'claim.'" *Foster-Gardner, Inc. v. Nat'l Union Ins. Co.*, 18 Cal. 4th 857, 878 (1998).  A "*claim*" may be "a demand for payment communicated in a letter, or a document filed to protect an injured party's right to sue a governmental entity, or the document used to initiate a wide variety of administrative proceedings." (*Id.* at 879.)

Port in the *Claims* and *Suits*." National Union did not seek a judicial determination concerning exhaustion.

The Port contested National Union's assertion that the two remaining Primary Policies were exhausted. Moreover, even if they were exhausted, "the terms of the Umbrella Policies would require National Union to drop down and defend the Port in the *Claims* and *Suits*."

National Union "repeatedly disputed" any defense obligation under the Umbrella Policies. However, on September 15, 2015, National Union acknowledged it "has a defense obligation to defend [S]uits in accordance with the terms of its [U]mbrella Policies."[5] Because of National Union's temporary cessation of defensive services, the Port incurred additional defense costs.

The Port commenced the present action on June 25, 2015, and filed its FAC on November 20, 2015, asserting five causes of action. On December 14, 2015, National Union filed a Motion to Dismiss, Sever and Stay, which was denied. On July 20, 2016, National Union submitted its Answer to the Port's FAC. The Port seeks a determination that the Primary Policies have not been exhausted as claimed by National Union and that it should have continued defending the Port until the Court or the Port agreed that the remaining two Primary Policies were exhausted. National Union disagrees with the Port's claims, contends that it has reimbursed all accrued defense fees and costs, and it maintains its actions have been both reasonable and correct. National Union also believes that the Port failed to cooperate as required under the policies because the Port withheld information and deprived National Union of the right to participate in the settlement of certain lawsuits.

_____

[5] Plaintiff referenced the September 15, 2015 letter in the FAC but failed to attach it. Defendant attached the letter to its Motion to Dismiss. Plaintiff did not dispute the authenticity of the September 15, 2015 letter in its Opposition.

The parties filed five cross-motions for summary judgment. (Doc. Nos. 33, 34, 47, 62, 63.) The Court's March 29, 2018 Order (Doc. No. 112) addressed the first three cross-motions. The Court now considers the remaining two cross-motions.

## II. Cross-Motions for Summary Judgment[6]

### A. Port's 'Second' Motion for Partial Summary Judgment on the Issues of Aggregate Limits and the Duty to Defend.

The Port moves for partial summary judgment in its second motion seeking judicial declarations that (1) "The 1982-85 Excess/Umbrella Policies do not contain aggregate limits of liability for environmental claims, but instead contain very specific limits of liability that apply only to insurance coverage for 'products liability' and 'occupational disease' claims; and (2) Even if there were overall aggregate limits for property damage liability in the 1982-85 Excess/Umbrella Policies, the policies still provide a duty to defend that is outside of limits and therefore defense does not erode limits." (Doc. No. 62 at 2.)

National Union disputes the Ports argument contending California law supports the premise that Umbrella Policies have aggregate limits." (Doc. No. 77 at 1.) Moreover, because the defense obligation is determined on a case by case basis, it would be a premature advisory opinion to adjudicate future defense obligations under the Umbrella Policies. (*Id.*)

### B. National Union's 'Third' Motion for Partial Summary Judgment on the First Cause of Action.

National Union moves for partial summary judgment under Fed. R. Civ. Pro., Rule 56(a) on the ground that the first cause of action for declaratory relief is without merit based upon the undisputed material facts and law. (Doc. No. 63 at 2.) Specifically, "the clear and unambiguous policy language in the Primary Policies, uncontroverted case law,

_____

[6] The Court finds the motions fully briefed and suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1.

and undisputed material facts demonstrate all four Primary Policies have been exhausted. As a result, [National Union] is excused from defending any claims and suits on the policies as of 2015, as reflected on National Union's Loss Runs." (*Id.*)  Moreover, the fact "the Port has failed to present evidence supporting the first cause of action further supports National Union's contention that the four primary policies have been exhausted. (*Id.*)

The Port disputes National Union's argument contending the evidence offered by National Union is inadmissible.  Moreover, the "motion presents an exhaustion theory that bears little resemblance to AIG's [National Union's] historically consistent if flawed, erosion theory." (Doc. No. 78 at 7.)  Finally, National Union's argument is inconsistent with California law, policy language, and its own prior conduct. (*Id.*)

**STANDARD OF REVIEW**

**I.    Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is material if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted." (*Id.*)  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (*Id.*)  In considering a summary judgment motion, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his or her favor. (*Id.* at 255.)

The moving party bears the initial burden of showing there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  It can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial. (*Id.*)  The burden then shifts to the non-moving party to show that there is a genuine issue for trial.

5

(*Id.*)  As a rule, the "mere existence of a scintilla of evidence" will be insufficient to raise a genuine issue of material fact. *Anderson*, 477 U.S. at 252.  There must be evidence on which the jury could reasonably find for the non-moving party. (*Id.*)  "The filing of cross-motions for summary judgment 'does not necessarily mean that there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other.'" *Hahn v. Massage Envy Franchising, LLC*, No. 12cv153, 2014 WL 5100220, at *3 (S.D. Cal. Sept. 25, 2014) (citation omitted); *see Halbert v. Cnty. of S.D.*, No. 07cv1607, 2010 WL 1292163, at *6 (S.D. Cal. Mar. 30, 2010).

The Court's subject matter jurisdiction over this case is based upon diversity jurisdiction under 28 U.S.C. § 1332(a).  Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies state substantive law and federal procedural law.  When addressing Plaintiffs and Defendants' claims, the Court will apply California Law.

Federal Rule of Civil Procedure 56(g) authorizes courts to grant partial summary judgment to limit the issues to be tried in a case. *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987) (citing *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981)).  Absent a specific statute authorizing otherwise, a partial summary judgment under Rule 56(g) is not a final judgment but rather an interlocutory summary adjudication or a pre-trial order, neither of which is appealable prior to the entry of a final judgment in the case. *Wynn v. Reconstruction Fin. Corp.*, 212 F.2d 953, 956 (9th Cir. 1954).

## II.  <u>California Insurance Law</u>

California law obligates an insurer to defend the insured when the facts alleged in the complaint create a potential for coverage. *Scottsdale Ins. Co. v. MV. Transp.*, 36 Cal. 4th 643, 654 (2005).  However, in evaluating the duty to defend, the insurer may also consider facts outside those alleged in the complaint. (*Id.*)  "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not

extinguished until the insurer negates all facts suggesting potential coverage." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). Thus, [i]n a declaratory relief action to determine the duty to defend, 'the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *State Farm v. Super. Ct.*, 164 Cal. App. 4th 1076, 1081 (1993).

The ordinary rules of contract interpretation govern the interpretation of an insurance policy. *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999). The fundamental goal of interpreting an insurance policy is to ascertain the parties' mutual intentions. *Vons Cos., Inc. v. United States Fire Ins. Co.*, 78 Cal. 4th 52, 58 (2000). Where possible, the Court infers those intentions solely from the policy's written terms. *AIU Ins. Co. v. FMC Corp.*, 51 Cal. 3d 807, 822 (1990). Thus, policy language that is clear and explicit governs. (*Id.*)

A policy term is ambiguous when it is susceptible to two or more reasonable constructions. *EMMI Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 470 (2004). Courts, therefore, will not adopt "a strained or absurd interpretation in order to create an ambiguity where none exists." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th 854, 867 (1993). Additionally, ambiguity cannot be found in the abstract. (*Id.*) Rather, the "proper question is whether the word is ambiguous in the context of this policy and the circumstances of this case." (*Id.* at 868). The "policy 'must be construed as an entirety, with each clause lending meaning to the other.'" *Carmel Dev. Co. v. RLI Ins. Co.*, 126 Cal. App. 4th 502, 507 (2005). "Further, 'where the insuring clause of a policy clearly covers a risk, and a subsequent limiting clause does not clearly exclude it, the risk will be deemed to be covered by the policy.'" *Kilroy Indus. v. United Pac. Ins. Co.*, 608 F. Supp. 847, 855 (C.D. Cal. 1985) (*citing Holz Rubber*, 14 Cal. 3d at 37.) Where an ambiguity exists, however, it should be resolved against the insurer. *EMMI, Inc.*, 32 Cal. 4th at 470-71 (citing *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal. 4th 758, 763 (2001)).

///

7

**III.    Evidence for Summary Judgment**

The Court first addresses the parties' requests regarding the evidence supporting the motions for partial summary judgment and cross summary judgment. These requests fall into two categories: requests for judicial notice and evidentiary objections to the evidence cited by the parties.

A.    *Request for Judicial Notice*

Federal Rule of Evidence 201 allows a court to take judicial notice of certain evidence and facts that are not subject to reasonable dispute if they are (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For example, a court may take judicial notice of "matters of public record." (*Id.*); *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Nevertheless, a court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b). Thus, while the court may take notice of the existence of documents in some cases, it does not necessarily take notice of the facts within those documents. *See Rezentes v. Sears, Roebuck & Co.*, 729 F. Supp. 2d 1197, 1206 (D. Haw. 2010). Furthermore, the court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation omitted).

**The Port's Request's for Judicial Notice**

The Port seeks judicial notice of six documents:

(1) *Exhibit 14*:    Declaration of Annemarie Malekos in Support of Landmark Insurance Company's Motion for Summary Judgment or in the Alternative Summary Adjudication, filed in the matter captioned, *San Diego Unified Port Dist. v. Landmark Insurance Co.*, Case No. 37-2008-00079002-CU-BC-CTL.

(2) _Exhibit 16_:     Complaint for the coverage litigation identified as _San Diego Unified Port Dist. v. Bellefonte Ins. Co., et al_., Case No. 631173, filed in the San Diego Superior Court.

(3) _Exhibit 17_:     Complaint for the coverage litigation identified as _San Diego Unified Port Dist. v. Pacific Indem. Co., et al_., Case No. 676326, filed in the San Diego Superior Court.

(4) _Exhibit 18_:     Complaint for the coverage litigation identified as _San Diego Unified Port Dist. v. Bellefonte Ins. Co., et al_., Case No. 671151, filed in the San Diego Superior Court.

(5) _Exhibit 19_:     Complaint for the coverage litigation identified as _San Diego Unified Port Dist. v. Pacific Indem. Co., et al.,_ Case No. 687287, filed in the San Diego Superior Court.

(6) _Exhibit 20_:     Complaint for the coverage litigation identified as _San Diego Unified Port Dist. v. Compass Ins. Co., et al_., Case No. 631171, filed in the San Diego Superior Court.

The documents at issue are court documents filed in the above-identified cases in the San Diego Superior Court and are properly the subject of judicial notice. This Court takes judicial notice of the filings. Fed. R. Evid. 201(c)(2). Accordingly, the Court **GRANTS** the Port's Request.

## National Union's Request's for Judicial Notice

National Union seeks judicial notice of eight documents:

(1) _Exhibit 36_:     California Regional Water Quality Control Board Investigative Order R9-2011-0026 as to Tow Basin claim and suit.

(2) _Exhibit 37_:     California Regional Water Quality Control Board Cleanup and Abatement Order R9-2012-0024 as to Nassco suit.

(3) _Exhibit 38_:     California Regional Water Quality Control Board Cleanup and Abatement Order 98-08 as to Rohr/Goodrich claim and suit.

(4) _Exhibit 39_:     California Regional Water Quality Control Board Cleanup and Abatement Order R9-2014-0019 as to Rohr/Goodrich claim and suit.

9

| (5) *Exhibit 40*: | Department of Toxic Substances Control as to Pepper Oil claim and suit. |
|---|---|
| (6) *Exhibit 41*: | California Regional Water Quality Control Board Investigative Order R9-2012-0007 as to the Laurel Hawthorn claim. |
| (7) *Exhibit 42*: | California Regional Water Quality Control Board Investigative Order R9-2012-0007 as to the Sunroad Marina claim; and |
| (8) *Exhibit 43*: | California Regional Water Quality Control online pamphlet. |

The documents at issue are Orders and a pamphlet from the California Regional Water Quality Control Board, a regulatory agency. Orders of regulatory agencies are admissible and properly subject to judicial notice as records of state agencies that are not reasonably subject to dispute. Fed. R. Evid. 201(b). These documents relate to the instant matter. Accordingly, the Court **GRANTS** National Union's Request.

B.  *Evidentiary Objections*

For a motion for summary judgment, "a party does not necessarily have to produce evidence in a form that would be admissible at trial." *See Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). "Rule 56[(c)] requires only that evidence 'would be admissible', not that it presently be admissible." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006); *see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 964 n.7 (9th Cir. 2011) ("Rule 56 is precisely worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at trial.") Thus, "[t]he focus is on the admissibility of the evidence's contents, not its form." *Estate of Hernandez-Rojas ex rel. Hernandez v. United States*, 62 F. Supp. 3d 1169, 1174 (S.D. Cal. 2014) (citing *Fonseca v. Sysco Food Servs. of Ariz., Inc.,* 374 F.3d 840, 846 (9th Cir. 2004)).

In addition, while a court will consider a party's evidentiary objections to a motion for summary judgment, "[o]bjections such as lack of foundation, speculation, hearsay, and relevance are duplicative of the summary judgment standard itself." *All Star Seed v. Nationwide Agribusiness Ins. Co.,* No. 12CV146 L BLM, 2014 WL 1286561, at *16-17

(S.D. Cal. Mar. 31, 2014) (citing *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006) ); *see also Comite de Jornaleros de Redondo Beach*, 657 F.3d at 964 n.7 ("[Rule] 56(c)(2) permits a party to 'object that the material cited to support or dispute a fact *cannot be presented* in a form that would be admissible in evidence'" (quoting Fed. R. Civ. Pro. 56)). Instead of challenging the admissibility of the evidence, the opposing party should argue the sufficiency of the evidence rather than make such superfluous objections. (*Id.*)  To the extent that evidence is irrelevant or argumentative, the Court will not consider it in deciding the motion for summary judgment.

Here, the Port submitted various evidentiary objections to National Union's third Motion for Partial Summary Judgment on the first cause of action and National Union filed a response to the Port's evidentiary objections. (*See* Doc. Nos. 78-1, 80-10.) However, "in motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *Doe v. Starbucks, Inc.*, No. 08-0582, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  "This is especially true when many of the objections are boilerplate recitations of evidentiary principles or blanket objections" with limited or no analysis applied to specific items of evidence." (*Id.*; *see also Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) (*explaining,* "The Court will not scrutinize each objection and give a full analysis of identical objections raised as to each fact").

The parties raise a number of objections in response to the respective opposing party's assertions of uncontested facts.  The Court addresses the relevant objections here. To the extent the Court does not explicitly address an objection, that objection is **OVERRULED as moot** because the Court does not rely upon the particular underlying evidence in deciding National Union's Motion.

///

///

**The Port's Evidentiary Objections**

1.     Declaration of Douglas R. Irvine

The Port objects to paragraph ¶ 7 of the Irvine Declaration (Doc. No. 63-2) based on lack of foundation.  Specifically, Mr. Irvine ("Irvine") does not lay a proper foundation for the loss runs.

Irvine declares under penalty of perjury that he is a California attorney and current counsel for National Union in this matter. (*See* Irvine Decl. ¶ 1.)  Irvine further declares that he is familiar with the documents and other materials in this action. (*Id*. ¶ 2.)  In September of 2016, National Union produced loss runs for primary policies, GLA 5000110 and SMP 800 2932. (*Id*. ¶ 7.)  A true and correct copy is attached to the Table of Exhibits as Exhibit 35 and was authenticated by Wanda Smith Campbell at paragraph 11 of her declaration. (Id. ¶ 11.)  Based on Irvine's position, familiarity, and knowledge, a sufficient foundation has been laid to demonstrate Irvine has personal knowledge and is competent to testify in this matter.  The objection on lack of foundation is **OVERRULED**.

2.     Declaration of Wanda C. Campbell

The Port objects to paragraphs ¶¶ 4, 9, 11, 12, and 13 of the Campbell Declaration (Doc. No. 63-3) based on lack of foundation and improper opinion testimony offered as a legal conclusion.

The Court has reviewed Ms. Campbell's ("Campbell") declaration.  Campbell declares under penalty of perjury that she is a Senior Analyst with AIG Claims, Inc. assigned to handling Claims and Suits reported by the Port. (*See* Campbell Decl. ¶ 1.) Campbell further declares that she is familiar with the facts in this case and if called as a witness, could and would testify competently thereto. (*Id*.)  She prepares and maintains AIG Claims, Inc. claim files and records with respect to reported claims in the ordinary course of business. (*Id*. ¶ 3.)  Campbell has reviewed the relevant portions of the AIG Claims Inc.'s business records, including the claim file containing the loss runs. (*Id*.)

Campbell details her personal evaluation of the Port's claims, as well as how she reviews, and prepares the loss runs. (*Id.* ¶ 11.) Campbell's declaration does not contain any legal conclusions.[7] (*Id.*)

The Port objects to portions of Campbell's declaration on hearsay grounds. Hearsay is inadmissible on summary judgment, as is testimony not based on the declarant's personal knowledge of the events detailed in the declaration. *Kim v. United States*, 121 F.3d 1269, 1276 (9th Cir. 1997).

The Port objects to paragraphs ¶¶ 4, 9, 11, 12, and 13 on the grounds of hearsay. The Port's objections to paragraphs ¶¶ 4, 9, 11, and 12 are **OVERRULED** as this testimony is found to be based on Campbell's personal knowledge.

The Port's objection to paragraph ¶ 13 is **SUSTAINED** to the extent it is evidence offered for the truth of the matter. However, the Court notes that statements do not qualify as hearsay when they "are not offered for the truth of the matter asserted, but [a]re admitted to establish that the statement was made or to demonstrate the effect the statement had on the hearer." *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 993 (C.D. Cal. 2013).

### 3. Exhibit 35, Loss Runs

The Port objects to the Loss Runs for general liability policies GLA 5000110 and SMP 8002932 as evidence of exhaustion – on the grounds of hearsay, relevance, and best evidence rule. (Doc. No. 78-1 at 2.) Specifically, to the extent that National Union is offering the loss runs for their truth, they are impermissible hearsay without any

---

[7] To the extent, the statements offered by National Union represent a legal conclusion, the Court, as a matter of course will not factor that material into the analysis. *See Burch*, 433 F. Supp. 2d at 1199 ("[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgment. Objections on any of these grounds are simply superfluous in this context.") (Citation omitted emphasis in original). Rather, the Court's analysis relies on evidence only that it has deemed admissible.

exception.  Moreover, the loss runs are irrelevant as they cannot be offered for their truth and do not provide any relevant guidance as to whether National Union properly allocated certain costs to defense or indemnity.  The settlement agreements identified in National Union's loss runs are the best evidence of the terms and proper allocation of such payments.

The loss runs are properly authenticated with the foundation laid by the declarations of Irvine and Campbell.  (Doc. Nos. 63-2, 3.)  National Union offers the loss run statements for the truth of the matter asserted being evidence of exhaustion making them hearsay and generally inadmissible.  However, the evidence fits within the business-records exception.  Under Rule 803(6)(B), records "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit" are excepted from the hearsay rule.  *See* Fed. R. Evid. 803(6)(B).

As set forth in the declarations of Irvine and Campbell, the loss runs were made at or near the time of the recorded events and maintained in the ordinary course of AIG's business by an individual with personal knowledge.  (Doc. No. 63-3.)  Moreover, even if Irvine and Campbell did not adequately identify the loss runs as admissible business records, this flaw may clearly be cured at trial.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents.")

The Port also argues the loss runs do not provide the best evidence of whether AIG properly allocated certain costs as defense or indemnity since the settlement agreements are the best evidence of the terms and proper allocation of such payments. (Doc. No. 78-1 ¶ 1.)  Rule 1002 of the Federal Rules of Civil Procedure requires that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  The rule is applicable only when one seeks to prove the contents of documents or a recording.  *United States v. Gonzales-Benitez*, 537 F.2d 1051, 1053 (9th Cir. 1976).  National Union contends the loss runs are merely

summaries of the various settlements, judgments, and expenditures paid by National Union on behalf of the Port. (Doc. No. 80-10 at 3.) National Union alleges use of the loss runs is reasonable because bringing in the thousands of documents still in existence to evidence payments made would be an incredible burden and very inconvenient. (*Id.*) Thus, when original documents are voluminous in number, a party may offer a summary in place of the original documents. However, counsel must provide the original documents to the opposing party for examination at a reasonable time, which is what occurred in this matter. Fed. R. Evid. 1006 (2015).

Thus, the Court **OVERRULES** the Port's objections on hearsay and Best Evidence Rule.

### 4. Declaration of Marian Brent

The Port objects to paragraph ¶ 2 of the Brent Declaration (Doc. No. 63-4) based on lack of foundation. Specifically, Ms. Brent ("Brent") does not lay a proper foundation for Exhibit 50, Summary of Paid Invoices.

Brent declares under penalty of perjury that she is an Assistant Vice president at Alan Gray, LLC, a specialized forensic accounting firm which provided National Union with data related services by gathering and analyzing large amounts claims and coverage information to determine National Union's loss and expense costs associated with its representation of the Port. (*See* Brent Decl. ¶ 1.) At National Union's request, Brent reviewed invoices and other documents generated by the Port and prepared a summary of those findings. (*Id*. ¶ 2.) A true and correct copy of the Summary was attached hereto and authenticated. (*Id*.) Based on her position, familiarity and authentication of the Summary, the Court is satisfied a sufficient foundation has been laid demonstrating Brent has sufficient personal knowledge to testify in this matter. The objection on lack of foundation is **OVERRULED**.

///

///

///

## 5. Exhibit 50, Summary of Paid Invoices

The Port objects to the Summary of Invoices on the ground that it is hearsay without any exception. Specifically, "Exhibit 50 is merely an irrelevant summary of invoices apparently paid by AIG." (Doc. No. 80-10 at 6.)

A written out of court statement is hearsay only if it is "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The objected document is an authenticated summary of paid invoices paid by National Union that was prepared by Brent. National Union seeks to submit the summary in place of the voluminous invoices submitted for payment "the magnitude of which is in the millions" would be a significant burden.[8] A "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined by the court." Fed. R. Evid. Rule 1006. As such, the Court **OVERRULES** the Port's hearsay objection.

## 6. Declaration of Douglas R. Beal

The Port objects to paragraph ¶ 3 of the Beal Declaration (Doc. No. 63-5) based on hearsay, and improper opinion testimony. Specifically, Mr. Beal's ("Beal") testimony regarding Exhibits 49A and 49B is impermissible hearsay without an exception and constitutes improper legal conclusions.

Notably, the Port fails to provide any examples of how Mr. Beal's declaration constitutes inadmissible hearsay. The Court finds the Port's objection is without merit because Mr. Beal's statements are not out of court statements. Moreover, they are not improper opinion testimony either as he is obviously qualified. Since 2014, Beal has been the Eastern Region Environmental Manager for Rimkus Consulting Group, Inc. (Doc. No. 63-5 ¶ 1.) Before that, he was the Senior Environmental Consultant for AIG working with various adjusters including the environmental claims department evaluating

---

[8] The summary was generated from invoices and documents prepared by the Port's own consultants and attorneys. (*Id.*)

claims documents including those prepared by consultants and vendors working at environmental sites. (*Id*. ¶¶ 1-2.) Additionally, Beal, having prepared the Invoice Master Lists is familiar with the facts of this case. (*Id*. ¶ 3.)

The objections to hearsay and improper opinion testimony are **OVERRULED**.

### 7. Exhibits 49A/B, Tabulation's for Rohr/Goodrich & Tow Basin sites

The Port objects to the Tabulation of Rohr/Goodrich Site and Tabulation of Tow Basin Site as impermissible hearsay without an exception, as well as because they contain improper legal conclusions.

The Court finds Exhibits 49A/B admissible on the same grounds as it found with Exhibit 50, Invoice Summary of Paid Invoices discussed *supra*.

As such, the Court **OVERRULES** the Port's hearsay and improper legal conclusions objections.

### **National Union's Evidentiary Objections**

National Union submits nineteen objections to the Port's Declaration of Scott E. Patterson ("Patterson"), submitted in support of their opposition to National Union's Motion for Partial Summary Judgment. (*See* Doc No. 80-9.) Specifically, National Union asserts various portions of Patterson's declaration are irrelevant, lack personal knowledge, authentication, not final, constitute improper opinion, and constitute hearsay. (*See id*.)

As to the Patterson's declaration, the Court does not rely on any assertions in the declaration that constitute hearsay, call for legal conclusions, or are otherwise inadmissible. Rather, the Court relies only on objective facts supported by Patterson's personal knowledge. As such, the Court **DENIES as moot** National Union's objections to Patterson's declaration (objections 1-19).

As to National Union's objections to Exhibits 2-15, 21-25, the Court does not rely on these documents in reaching its conclusion below. Accordingly, the Court **DENIES as moot** National Union's objections to Exhibits 2-15, 21-25.

///

## DISCUSSION

## I.    The Port's Second Motion for Partial Summary Judgment on the Issues of Aggregate Limits and Duty to Defend.

In its Second Motion for Partial Summary Judgment, the Port contends the 1982-85 Excess/Umbrella Policies demonstrate National Union agreed to "pay . . . that portion of the ultimate net loss in excess of the retained limit as hereinafter defined, which the Insured shall become legally obligated to pay as damages for liability imposed upon the Insured by law . . . because of . . . property damage . . . caused by an occurrence." (Doc. No. 62-1 at 13.)  Each policy also includes an endorsement, referred to as the "Limit of Liability Endorsement," which amends or replaces entirely the "limits of liability – retained limit" provisions of each Excess/Umbrella policy such that the aggregate limits of liability apply *only* to insurance coverage for "products liability" and "occupational disease" claims.[9] (*Id.* at 7.)

The Port argues amending or replacing the liability requirements as described, together with the fact the endorsements fail to list any other claims for which aggregate limits apply, establishes the Umbrella Policies lack any aggregate limit outside of "products liability" and "occupational disease" claims. (*Id.* at 17-18.)  Citing *Aerojet-Gen. Corp. v. Transp. Indem. Co.*, the Port contends well-settled California law supports this position since the terms of an endorsement control over inconsistent terms contained in a policy form. *See Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38 (1997). Thus, the endorsement calls for removing the contested form language from the "Limit of Liability – Retained Limit" section, which states:

> "In those cases where the underlying insurance listed in the Schedule of Underlying Insurance Policies contains coverage(s), which are subject to an Aggregate Limit of Liability for all insured damages, the

---

[9] The Limit of Liability Endorsements to the 1983-84 and 1984-85 policies contain identical language, except that the amount stated in the endorsements is $50,000,000, as opposed to $20,000,000. (Doc. No. 79 Ex. F, *see* 62-9 at 53; Ex. G, *see* 63-10 at 71.)

Company's liability shall likewise be limited to the amount stated in Item 3(b) of the Declarations . . . ."

The endorsement language demonstrates Landmark intended to restrict the policy's aggregate limit to only claims related to "products liability" and "occupational disease." (*Id*. at 14.) Accordingly, there can be no overall aggregate limits in the 1982-85 Excess/Umbrella Policies outside of claims for "products liability" and "personal injury by occupational disease." (*Id*.) Alternatively, the Port argues its "reasonable interpretation" of the policy language creates an ambiguity that can't be resolved, requiring the Court to hold in favor of the Port.

National Union disputes the Port's argument contending, "California law supports its position that, in fact, the Umbrella Policies indeed do have aggregate limits." *Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30, 44 (2nd App. Dist. 2005). (Doc. No. 77 at 7.) In this case, a review of the Port's Umbrella Policy provisions demonstrates coverage is limited both horizontally and vertically, such that there cannot be an absence of aggregate limits.[10] (*Id*. at 2.) This is further illustrates by the fact the Port purchased coverage in excess of the Umbrella Policies, which included non-cumulation of liability conditions and prohibitions preventing 'stacking' of policy limits.[11] (Doc. No. 77 at 1.) Moreover, since "the defense obligation is necessarily determined on a case by case

---

[10] The *Garamendi* court explained that, in order to harmonize the layers of insurance policies at issue, . . . "[W]e do nothing more difficult than conclude that the word "separately" preceding the phrase "in respect of Products Liability and [Occupational Injury]" in the Mission policy does not mean "only" and that the failure to specifically mention property damage in that phrase does not, by negative implication, mean there is no annual aggregate floor for property damage, but instead means there is no 'separate' aggregate" (Doc. No. 77 at 15.)

[11] There are normally two types of limits: (1) per-occurrence limits, which define the amount the policy will pay for each occurrence; and (2) aggregate limits, which define the total amount that the insurance policy will pay. *See* Jordan S. Stanzler, Lorelie S. Masters & Eugene R. Anderson, *Insurance Coverage Litigation* § 15.13 (2d ed. 2017).

basis, it would result in a premature advisory opinion to adjudicate future defense obligations under the Umbrella Policies" at this time.[12] (*Id.*)

Next, National Union contends that if the court adopts the Port's position, it will violate a fundamental rule of policy interpretation requiring Courts to give meaning and effect to all terms of the policy. *ACS Systems, Inc. v. St. Paul Fire & Marine Insurance Co.*, 147 Cal.App.4th 137, 151 (2007). The Port's characterization of the interplay between an endorsement and the standard policy form is a prime example. (*Id.* at 6.) As the Port interprets *Aerojet-Gen.*, when there is a dispute in the meaning between policy documents, interpret the language broadly such that an endorsement supersedes the entire policy. (*Id.*) Specifically, under the guise of 'amending' the umbrella policies in accordance with the endorsement, the Port removes all the "limits of liability – retained limit" language instead of just removing inconsistent wording, thereby preventing the reader from appreciating the issue that facilitated the inclusion of the endorsement.[13] This all-encompassing approach depicts the Umbrella Policies as lacking aggregate limits outside of products liability and occupational disease claims, as amended by the endorsement. While the Port's interpretation is overly inclusive, the Court can see how the insured could reasonably interpret the policy language in this manner.

In contrast, National Union requests the Court disregard the Port's reading of the Umbrella Policies, as it ignores the fundamental principles of contract and policy interpretation. Specifically, National Union argues *Aerojet-Gen.* only modified the insurer's duties to indemnify and defend, but nothing more. (*Id.*)

> It is important to recognize that the endorsement alters the policy only to the extent set forth in the text of the endorsement. In other words, the terms and conditions of the basic policy form remain in full force

---

[12] The *Garamendi* court further questioned how an insurer could operate its business and calculate premiums that led to a profitable enterprise if it had no notion what its upper liability will be. (*Id.*)

[13] Supporting evidence is the Declaration of Wanda Campbell at ¶¶11-16 (Doc. No. 47-4) and related Exhibits 17–21 (Doc. Nos. 47-6 and 47-17 – 47-21).

and effect, except to the extent they are expressly altered by the endorsement.

3-21 *New Appleman on Insurance Law Library Edition* § 21.91[1], ¶ 9.

This allows the policy to be viewed as a whole, thereby giving effect to every term and not disregarding any policy language. *See, Firearm's Fund Ins. Co. v. Superior Court*, 65 Cal.App.4th 1205, 1217-1218 (1997). A [court] "'must strive to give every term meaning unless to do so would render the term inconsistent or contradictory'" (Doc. No. at 7.) "If contractual language is clear and explicit, it governs. On the other hand, when policy language is ambiguous, rules applicable to resolving ambiguity control." (*Id.*) (Citing *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264–1265 (1992)).[14] Moreover, it supports precedent that insurance companies have "the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Continental Cas. Co. v. Phoenix Constru. Co.*, 46 Cal.2d 423, 432 (1956). As with the Port's argument above, the Court can appreciate how National Union could reasonably interpret the policy language in this manner.

By and large, the Port and National Union assert reasonable arguments in support of their specific positions. Despite their best efforts, interpreting the policy and ascertaining the intent of the parties at the time of contracting is far from clear. Having considered the extensive briefing provided by the parties, authority governing contract and insurance policy interpretation, lack of any controlling authority, and the extrinsic evidence provided by the parties, the Court finds the Excess/Umbrella policy language

_____

[14] "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pacific Gas & E. Co.*, 69 Cal.2d 33, 37 (1968). "And although parol evidence may be admissible to determine whether the terms of a contract are ambiguous, it is not admissible if it contradicts a clear and explicit policy provision." *George v. Automobile Club of S. Cal.*, 201 Cal.App.4th 1112, 1121 (2011) (internal citations and quotation marks omitted).

ambiguous and susceptible to more than one reasonable interpretation. Specifically, the Court finds there are questions of fact precluding a ruling that the Umbrella Policies are subject to an aggregate limit outside of "products liability" and "occupational disease" claims.

Therefore, the Court **GRANTS** Port's Second Motion for Summary Judgment on the issues of Aggregate Limits and Duty to Defend.

## II.     National Union's Third Motion for Partial Summary Judgment on the *First Cause of Action*.[15]

National Union moves for a declaration that the Port's four Primary Policies ("PP") exhausted as of (*at least*) 2015. (Doc. No. 63 at 2.) It is undisputed that the Port concedes in paragraphs ¶¶ 6, 7 and 15 of the FAC, exhaustion of two of the four PP's as a result of payments made by National Union between 1982 to the present. (Doc. No. 63 at 2.) National Union bases its argument for exhaustion on the applicable insuring agreements within the PP's affording coverage for "liability imposed by law." (Doc. No. 63 at 2.) Moreover, National Union contends this would include expenditures incurred in order to comply with statutorily authorized investigative, clean up and abatement ("Orders") issued by the California Regional Water Control Board ("RWQCB") and a similar order issued by the California Department of Toxic Substance Control ("DTSC"). (*Id.* at 2-3.) Pending a judicial determination regarding exhaustion, National Union has resumed defending the Port against claims and suits, subject to a reservation of rights on the two remaining PP's.[16] (*Id.*, Campbell Dec. at ¶ 9-10.)

---

[15] The parties' evidentiary objections and requests for admission were addressed *supra* and repeated in this section as needed in limited form.

[16] The two disputed policies are GLA 5000110 for the period of May 1, 1982 to May 1, 1983 and Policy SMP 8002392 for the period of May 1, 1984 to May 1, 1985. Both policies include an endorsement entitled, "Broad Form Property Damage Liability Insurance" (the" BFPD Coverage"). (Doc. No. 78 at 3.)

The Port disputes National Union's contention that the four PP's have exhausted asserting that the National Union failed to provide any admissible evidence in support of its claim of exhaustion. (*See* Doc. No. 78.) Moreover, the Port also alleges National Union improperly allocated defense costs to indemnity to erode the policy limits. Finally, the Port asserts that it did not breach the PP cooperation clause or violate Calif. Civil Code § 2860 (d) and (3) because National Union had notified the Port that it would cease defending the Port claims and suits pending under the PP's.

For the foregoing reasons, the Court finds that National Unions' argument for exhaustion is unavailing.

A.    *Evidence of Exhaustion*

National Union offered the following documents in support of its motion - a 2015 loss run (*Exhibit* 35); ledger/payment tables purporting to establish amounts paid for remediation (*Exhibits* 49A and 49B); and a chart purporting to identify how much National Union has paid over the years (*Exhibit* 50). Defendant alleges its Loss Runs demonstrate all four of the PP's have exhausted through settlement, judgment, and payments made by it [National Union] to comply with such Orders.[17] (Doc. No. 63-1, "Loss Run", Exh. 35, authenticated in the Campbell Dec. at ¶ 11.) In support, it submits exhibits 49A, 49B and 50 containing tables summarizing payments made as to claims and

---

[17] Under the principles of California insurance law, when an insurance company takes a position and acts upon it, it must be able to justify this decision based upon the information in its possession at the time of the decision. *Filippo Industries, Inc. v. Sun Ins. Co. of New York*, 33 Cal.App.4th 963, 977 (1995).

suits at issue under the policies and reflecting expenditures far in excess of the PP limits of $500,000 each.[18] (*Id.* at 3.)

Moreover, National Union argues the Port prevented it from exercising its contractual right to settle, breached the cooperation clause, and violated Cal. Civil Code § 2860(d) and (f) when it refused to allow National Union to participate in a September 2015 mediation between the Port and its other carriers in the Rohr suit. The Port does not dispute that it prevented National Union from participating in settlement negotiations for tactical reasons. However, Plaintiff argues that the Defendant failed to demonstrate that it sustained substantial prejudice from Plaintiffs actions. (Doc. No. 78 at 4.)

Having read the parties' submissions and being familiar with the facts of this case, the Court finds that National Union has not satisfied the heavy burden necessary to justify an award of summary judgment.

Without admissible evidence to demonstrate the policy limits have been satisfied, exhaustion of all four policies cannot be determined. Therefore, the Court, **DENIES** National Union's Third Motion for Partial Summary Judgment.

///
///
///
///
///

_____

[18] As reviewed in Exh. 50, AIG paid $1,456,182 to environmental consultant experts related to compliance with the Orders, $4,798, 304 to the Port's lawyers, and $153,833 to other vendors. Exh. 49A and 49B relate to the Rohr Goodrich and Tow Basin matters respectively, as authenticated in the Declaration of Douglas R. Beal. ("Beal Dec.") Exh. 49A reflects that at least $540,747.63 paid to Tetra Tech, an environmental consultant, for remediation cost work as to the Rohr/Goodrich environmental Orders. Exh. 49B reflects that at least $16,071.39 paid to Windward, an environmental consultant, for remediation cost work as to the Tow Basin environmental order. (Doc. No. 63-1 at 3.)

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Port's Second Motion for Partial Summary Judgment, and **DENIES** National Union's Third Motion for Partial Summary Judgment.

**IT IS SO ORDERED**.

DATED:  September __28__, 2018

**HON. ROGER T. BENITEZ**
United States District Court Judge

15cv1401 BEN (MDD)