FILED
OCT 23 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO UNIFIED PORT DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., successor-in-interest to AIG INSURANCE CO., and DOES 1 - 50, Inclusive,<br><br>Defendant. | Case No.: 3:15-cv-01401-BEN-MDD<br><br>**ORDER ON MOTIONS IN LIMINE**<br><br>**[Doc. Nos. 120, 121, 122, 124, 127, 130, 131, 133, 135, 136, 137, 138, 139, 141, 143, 144, 145, 147]** |

Defendant National Union, successor-in-interest to Landmark Insurance Company ("Landmark") sold the Port both *primary liability* and *umbrella liability* insurance policies, promising to defend and indemnify the Port against certain property damage liability claims or lawsuits. National Union issued four primary policies to the Port.[1] National

---

[1] The parties agree that two of the primary policies are exhausted. (Policy Nos. SMP 8002308 & GLA 5000574.) There are two other primary policies, which the Port contends are not exhausted. (Policy Nos. GLA 5000110 and SMP 8002932.)

1

Union also sold the Port "the first layer of liability insurance directly above the Unexhausted Primary Policies and Exhausted Primary Policies in the form of" umbrella insurance policies. Coverage under the four Umbrella Policies is triggered once the Primary Policies are exhausted.

According to the First Amended Complaint ("FAC"), the Port tendered, and National Union agreed to provide a defense under the Unexhausted Primary Policies to certain claims ("*Claims*") and lawsuits ("*Suits*") asserted against the Port.[2] Subsequently, National Union informed the Port that it "unilaterally would be assigning payments for one of the Port's defense experts to [National Union's] indemnity obligation against the Unexhausted Primary Policies' limits." National Union then tendered the asserted remaining policy limits to the Port and informed the Port "[National Union] considered the Unexhausted Primary Policies to be exhausted and that it would cease defending the Port in the *Claims* and *Suits*." National Union did not seek a judicial determination concerning exhaustion.

The Port contested National Union's assertion that the two remaining Primary Policies were exhausted. Moreover, even if they were exhausted, "the terms of the Umbrella Policies would require National Union to drop down and defend the Port in the *Claims* and *Suits*."

National Union "repeatedly disputed" any defense obligation under the Umbrella Policies. However, on September 15, 2015, National Union acknowledged it "has a defense obligation to defend [S]uits in accordance with the terms of its [U]mbrella

---

[2] The California Supreme Court has explained that a "*suit*" means a "civil action commenced by filing a complaint," and "[a]nything short of this is a 'claim.'" *Foster-Gardner, Inc. v. Nat'l Union Ins. Co.*, 18 Cal. 4th 857, 878 (1998). A "*claim*" may be "a demand for payment communicated in a letter, or a document filed to protect an injured party's right to sue a governmental entity, or the document used to initiate a wide variety of administrative proceedings." (*Id.* at 879.)

Policies." Because of National Union's temporary cessation of defensive services, the Port incurred additional defense costs.

The Port commenced the present action on June 25, 2015, and filed its FAC on November 20, 2015, asserting five causes of action. On December 14, 2015, National Union filed a Motion to Dismiss, Sever and Stay, which was denied. On July 20, 2016, National Union submitted its Answer to the Port's FAC. The Port seeks a determination that the Primary Policies have not been exhausted as claimed by National Union and that it should have continued defending the Port until the Court or the Port agreed that the remaining two Primary Policies were exhausted. National Union disagrees with the Port's claims contending it has reimbursed all accrued defense fees and costs, and it maintains its actions have been both reasonable and correct. National Union also believes that the Port failed to cooperate as required under the policies because the Port withheld information and deprived National Union of the right to participate in the settlement of certain lawsuits.

In preparation for trial, the parties filed several motions in limine to exclude evidence. National Union filed fourteen motions in limine and the Port filed four. The motions are fully briefed.

Upon consideration of the issues raised in the parties' briefings, the Court rules as follows.

## **LEGAL STANDARD**

A.  Standards for Motions in Limine

A court may make "a definitive ruling on the record admitting or excluding evidence, either at or before trial." Fed. R. Evid. 103. Rulings on motions in limine fall entirely within this Court's discretion. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce v. United States*, 469 U.S. 38, 41-42 (1984)). The evidence is excluded on a motion in limine only if the evidence is clearly inadmissible for any purpose. *Fresenius Med. Care Holdings, Inc., v. Baxter Int'l, Inc.*, No. C 03-1431 SBA (EDL), 2006 WL 1646113, at *3 (N.D. Cal. June 12, 2006). If evidence is not clearly inadmissible, evidentiary rulings should be deferred until trial to allow questions of foundation,

relevancy, and prejudice to be resolved in context. *See Bensimon*, 172 F.3d at 1127 (when ruling on a motion in limine, a trial court lacks access to all the facts from trial testimony). Denial of a motion in limine does not mean that the evidence contemplated by the motion will be admitted at trial. (*Id.*) Instead, denial means that the court cannot, or should not, determine whether the evidence in question should be excluded before trial. (*Id.*); *see also McSherry v. City of Long Beach*, 423 F.3d 1015, 1022 (9th Cir. 2005) (rulings on motions in limine are subject to change when trial unfolds).

## DISCUSSION

### I. National Unions' Motions in Limine

#### A. Motion No. 1 – Evidence Supporting Breach of Contract Claim and *Sua Sponte* Dismiss Breach of Contract Claim. (Doc. No. 122.)

Defendant seeks to preclude the Port from offering, testifying, or referencing evidence regarding the Port's fourth cause of action for breach of contract, or, alternatively, dismissing the fourth cause of action *sua sponte* on the grounds that it is now moot. (Defs' MIL No. 1 at 2, Doc. No. 122.)

The Port contends that it incurred out of pocket legal fees in recovering the defense costs which the Defendant should have been paying from January 2015 to January 2017. (Pl.'s Opp. Dft. MIL No. 1 at 3, Doc. No. 148.) The Port seeks to offer evidence and testimony that Defendant's resumption of its defense duties in no way cured its breach of the Policies. (*Id.* at 1.) The Port's opposition also addresses National Union's MIL No. 11 discussed below.

The motion is **DENIED**. The probative value of the evidence with respect to National Union's action's regarding the Port's Breach of Contract Claim outweigh any potential prejudice that may arise from its inclusion. The Court further finds it would be inappropriate to *sua sponte* dismiss the Port's Breach of Contract Claim.

///

///

///

B. <u>Motion No. 2 – The Port's Expert and Employee Witness Testimony</u>.
(Doc. No. 130.)

Defendant next asks the Court to preclude the Port from introducing, referring or commenting on evidence related to the District's consultants which have not previously been produced. (Defs' MIL No. 2 at 2, Doc. No. 122.) The Port opposes the motion contending that National Union's motion presents no evidence of any stated intention by the Port to present previously unproduced evidence, nor does it identify any evidence which it believes the Port will seek to introduce. (Pl.'s Opp. Dft. MIL No. 2 at 3, Doc. No. 148.)

The motion is **DENIED**. However, should the issue arise during trial, National Union may request the Court to reconsider its holding on this motion.

C. <u>Motion No. 3 – Preclude Evidence of Alleged Bad Faith Conduct Released by Prior Settlement Agreements</u>. (Doc. No. 136.)

Defendant next seeks to preclude evidence of "bad faith" conduct released by settlement agreements previously entered into by the parties. (Defs' MIL No. 3 at 2, Doc. No. 136.) The Port opposes the motion contending that National Union mischaracterized the scope of the bad faith release, alleging that it was limited to claims and defense cost invoices specified within the settlement agreements. (Pl.'s Opp. Dft. MIL No. 3 at 3, Doc. No. 154.)

The motion is **DENIED**. National Union fails to acknowledge under the terms of the settlement agreement that the bad faith waiver applied *only* to conduct relating to the payment of invoices specified in the settlement agreements and Exhibit A attached thereto. Moreover, National Union fails to demonstrate how the evidence it seeks to preclude would be unduly prejudicial, time-consuming, or confusing to the jury.

D. <u>Motion No. 4 – Preclude Evidence of claimed *Brandt* fees</u>. (Doc. No. 137.)

Defendant seeks to preclude or limit the presentation of evidence or making reference to the Port's claim for attorneys' fees and costs in this case, pursuant to the decision in *Brandt v. Superior Court*, 37 Cal.3d 813 (1985). (Defs' MIL No. 4 at 2, Doc.

No. 137.) The Port opposes the motion contending it submitted all evidence required under the *Brandt* standard, thereby demonstrating compliance with this Court's June 7, 2017 Order regarding disclosure of *Brandt* evidence. (Pl.'s Opp. Dft. MIL No. 4 at 1, Doc. No. 155.)

The motion is **DENIED**. National Union's motion falls short of demonstrating the Port did not comply with the *Brandt* standard or this Court's instructions pursuant to its June 7, 2017 Order.

    E.    <u>Motion No. 5 – Preclude Litigation Conduct From Trial Evidence</u>. (Doc. No. 124.)

Defendant seeks to preclude evidence of its own litigation conduct based on California Civil Code § 47 (b) and Fed. R. Evid. 501. (Defs' MIL No. 5 at 2, Doc. No. 124.) The Port opposes the motion contending it is unsettled whether the litigation privilege of § 47(b) applies to a carrier sued for bad faith (*see Nies v. National Auto. & Cas. Inc. Co*, 199 Cal. App.3d 1192, 1203, n. 7 (1988)). Even assuming the general applicability of the privilege, it has no application to the matters identified by National Union. (Pl.'s Opp. Dft. MIL No. 5 at 2, Doc. No. 142.)

The motion is **GRANTED in part and DENIED in part**. National Union's motion is denied as to evidence or testimony referencing the fact that National Union did not file an action for declaratory relief and obtain a judicial declaration in its favor prior to terminating coverage. The motion is granted as to any other evidence, testimony, or reference of litigation conduct.

    F.    <u>Motion No. 6 – Preclude Any Testimony by the Port's Witness Randa Coniglio</u>. (Doc. No. 131.)

Defendant withdraws its Motion in Limine No. 6. (Defs' MIL No. 6 at 1, Doc. No. 137.) National Union and the Port reached an agreement that National Union would withdraw its objection to the Port calling Randa Coniglio as a witness, and the Port would not object to the addition of Martin Eide to National Union's list of trial witnesses. (*Id.* at 2.)

6

3:15-cv-01401-BEN-MDD

The Court **DENIES as MOOT/WITHDRAWN**, Defendant's Motion in Limine No. 6.

    G.    <u>Motion No. 7 – Preclude from Evidence the "Chartis U.S. Domestic Legal Compliance Manual," Port Trial Exhibit 229</u>. (Doc. No. 135.)

Defendant seeks to preclude from use at trial the document entitled "Chartis U.S. Domestic Legal Compliance Manual" because it lacks foundation, is not a claims handling manual, it is irrelevant, immaterial, and more prejudicial than probative under FRE 403. (Defs' MIL No. 7 at 2, Doc. No. 135.)

The Port opposes the motion contending the following four points: First, the Claims Manual is not irrelevant because whether National Union implemented and maintained reasonable claims handling standards is at issue because the existence of guidance for claims managers is an enumerated element of the unfair claims handling guidelines acknowledged in the Claims Manual itself. (Pl.'s Opp. Dft. MIL No. 7 at 1, Doc. No. 160.) Second, National Union cannot contest the Claims Manual authenticity because a party-opponent cannot produce a company document and later challenge that same document's authenticity. (*Id.*) Third, the Claims Manual is not likely to create confusion because the contents and language speak for themselves and make it clear that it is a claim handling manual including a specific section devoted to "Claims Practices." (*Id.*) Fourth, despite not producing the Claims Manual until the Court compelled National Union to do so after the close of discovery, National Union's witnesses were asked about claims handling manuals, including this Claims Manual, during depositions. (*Id.*)

This Court **RESERVES RULING** on National Union's motion to preclude the document entitled "Chartis U.S. Domestic Legal Compliance Manual," Port Trial Exhibit 229 until trial.

///

///

///

H. <u>Motion No. 8 – Preclude Evidence and Argument from the Port Disputing the Archived Losses</u>. (Doc. No. 141.)

Defendant seeks to preclude the Port from offering evidence or testimony disputing the admissibility of National Union's archived losses as depicted on the Loss Run records (from the 1980s) pursuant to the ancient document rule and lack of contradictory evidence. (Defs' MIL No. 8 at 2, Doc. No. 142.)

The Port opposes the motion contending the entries on the Loss Runs are the evidence upon which National Union relies to support its argument that the two policies at issue in this action, policy SMP 8002392 and GLA 500110 are exhausted. (Pl.'s Opp. Dft. MIL No. 8 at 1, Doc. No. 158.) The Port's opposition also addresses National Union's MIL No. 9 discussed below.

The motion is **DENIED**, subject to the Port laying the proper foundation and addressing any privilege objection raised at trial.

I. <u>Motion No. 9 – Preclude Testimony and Evidence of Payments to Indemnify Five Matters</u>. (Doc. No. 147.)

Defendant seeks to preclude the Port from offering evidence or testimony disputing the admissibility and validity of five specified pre-2001 indemnity payments made by National Union as depicted on the Loss Runs. (Defs' MIL No. 9 at 2, Doc. No. 147.)

The Port opposes the motion, contending the entries on the Loss Runs which are the evidence upon which National Union relies upon for its position that the two policies at issue in this Action, policy SMP 8002392 and GLA 500110 are exhausted. (Pl.'s Opp. Dft. MIL No. 9 at 1, Doc. No. 158.)

The motion is **DENIED**, subject to the Port laying the proper foundation and addressing any privilege objection raised at trial.

///
///
///
///

8

3:15-cv-01401-BEN-MDD

J.  Motion No. 10 – To Bifurcate the Amount of Punitive Damages and to Preclude Evidence of National Union's Wealth. (Doc. No. 145.)

Defendant seeks to bifurcate the damages phase of the punitive claim and preclude evidence of financial condition until preliminary criteria are established. (*see* Defs' MIL No. 10, Doc. No. 145.)

The Port opposes the motion contending bifurcating the punitive damage claim from the rest of the trial would be against judicial economy and would prejudice the Port by prohibiting it from introducing evidence of National Union's financial condition in support of its punitive damages claim. (Pl.'s Opp. Dft. MIL No. 10 at 1, Doc. No. 157.)

Under Rule 42(b) of the Federal Rules of Civil Procedure, the Court may order separate trials for one or more separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize...." To determine whether to order bifurcation, courts generally look to whether bifurcation will promote "'efficient judicial administration,' considering such factors as convenience, prejudice to the parties, simplification of discovery and conservation of resources, the risk of jury confusion, and separability of the issues." *Medtronic Minimed Inc. v. Animas Corp.,* No. CV 12-04471, 2013 WL 3233341, at *1 (C.D. Cal. June 25, 2013) (citing *Pinal Creek Grp. v. Newmont Mining Corp.*, 218 F.R.D. 652, 654 (D. Ariz. 2003) and *Mformation Techs., Inc. v. Research in Motion Ltd.*, No. C 08-04990, 2012 WL 1142537, at *1 (N.D. Cal. March 29, 2012)). And "[b]ecause bifurcation rests in principles of judicial economy, additional considerations include (1) whether the evidence offered in the proposed phases will overlap, and (2) whether bifurcation will permit deferral of costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *J2 Glob. Commc'ns, Inc. v. Protus IP Sols.*, No. CV 06-00566, 2009 WL 910701, at *2 (C.D. Cal. Mar. 31, 2009) (quotations omitted) (citing *Hangarter v. Provident Life & Acc. Inc. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004); *Jinro America, Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 998 (9th Cir. 2001)).

"Bifurcation is particularly appropriate when the resolution of a claim or issue might dispose of the entire case." *Renfrow v. Redwood Fire & Cas. Ins. Co.*, 288 F.R.D. 514, 523 (D. Nev. 2013). But the Court has "discretion to subdivide the case in whatever manner seems dictated by the circumstances" (*Rivera v. Nibco, Inc.*, No. CIVF-99-6443, 2006 WL 845925, at *5 (E.D. Cal. Mar. 31, 2006) (quotations omitted)), and bifurcation "is the exception rather than the rule of normal trial procedure" within the Ninth Circuit. *Clark v. I.R.S.*, 772 F. Supp. 3d 1265, 1269 (D. Haw. 2009) (citing *Hangarter*, 373 F.3d at 1021).

In this case, bifurcation into two jury trials will necessarily complicate and delay this proceeding, and the Court concludes Defendant's proposal does not outweigh bifurcation's disruptive effect. Accordingly, the Court **DECLINES** to bifurcate the trial as proposed by National Union. The motion is **DENIED**.

K. <u>Motion No. 11 – Preclude Evidence of Bad Faith and Breach of the Covenant of Good Faith and Fair Dealing, or in the alternative, to Dismiss the Fifth Claim *sua sponte*</u>. (Doc. No. 143.)

Defendant moves (1) to preclude referencing the Port's cause of action for bad faith and breach of the covenant of good faith and fair dealing based on the Genuine Dispute Doctrine, or, alternatively, dismissing that cause of action *sua sponte* on the grounds that any such claim is now moot; (2) to prohibit all parties from offering any evidence of, referring to, or commenting in any way on the statements contained within; and (3) precluding all parties from making any reference to the fact that this motion has been filed and/or granted for any purpose other than to enforce the Court's order on this motion. (Defs' MIL No. 11 at 2, Doc. No. 143.)

The Port contends it incurred out of pocket legal fees in recovering the defense costs which National Union should have been paying from January 2015 to January 2017. (Pl.'s Opp. Dft. MIL No. 11 at 2, Doc. No. 148.) Moreover, National Union's reliance upon the genuine dispute doctrine to dismiss the Port's cause of action for breach of the implied covenant of good faith and fair dealing is misplaced due to National Union's abandonment

of the Port's defense which is directly contrary to clear authority regarding how a carrier must proceed if there is a dispute about exhaustion. (*Id.*)

The motion is **DENIED**. The probative value of the evidence with respect to National Union's actions regarding the Port's Bad Faith Claim outweighs any potential prejudice that may arise. The Court further finds it would be inappropriate to *sua sponte* dismiss the Port's Bad Faith Claim.

L. <u>Motion No. 12 – Preclude Evidence that National Union Waived the Attorney-Client Privilege, etc. Regarding Ms. Campbell's Testimony</u>. (Doc. No. 144.)

Defendant seeks to preclude the Port from offering evidence or referring to National Union's assertion of waiver of the attorney-client privilege and disputing the right of a witness to make corrections to a deposition transcript. (Defs' MIL No. 12 at 2, Doc. No. 144.)

The Port opposes the motion contending it has not designated any testimony from Wanda Smith-Campbell's deposition to which National Union makes a privilege objection. (Pl.'s Opp. Dft. MIL No. 12 at 1, Doc. No. 156.) Moreover, the purpose of an errata is to correct, not to contradict witness testimony. (*Id.*)

The motion is **DENIED**.

M. <u>Motion No. 13 – Preclude Testimony by the Port's Expert Witness Dorn Bishop</u>. (Doc. No. 139.)

Defendant seeks to preclude the Port from offering or referencing testimony or the expert report of the Port's Expert Witness Dorn G. Bishop on the grounds that Mr. Bishop's opinions consist of improper legal opinion, lack foundation and are without evidentiary basis. (Defs' MIL No. 13 at 2, Doc. No. 139.)

The Port opposes the motion contending that National Union mischaracterizes Mr. Bishop's opinions, labeling them legal conclusions when in fact they espouse no such legal conclusion and instead relate to insurance industry customs and practices which in no way invades the jury or Courts province. (Pl.'s Opp. Dft. MIL No. 13 at 1, Doc. No. 161.)

Moreover, Mr. Bishop, as an insurance coverage expert, is permitted to rely on applicable law and industry standards as well as his experience in forming an expert opinion as long as it is grounded in the requisite foundation and evidentiary basis under the Federal Rules of Evidence. (*Id.*)

The motion is **GRANTED in part and DENIED in part**. Although it is undisputed that Mr. Bishop is an attorney and not a claims adjuster, it is entirely proper for an expert to rely on the applicable law and industry standards in forming an opinion. The Port has identified sufficient factual foundation for his opinion of whether an insurer "deviated from industry standards [to support] a finding that they acted in bad faith (i.e. an ultimate issue of law). Furthermore, Mr. Bishop's testimony and expert report will be helpful to the trier of fact because it will provide a framework for understanding complex claims handling practices involving insurance cases, including issues related to policy exhaustion and an insurers' duty to defend its policyholder. National Union's motion is **DENIED** as to Mr. Bishop's testimony and expert report. Testimony outside of the aforementioned subject areas is inadmissible and National Union's motion is **GRANTED** as to evidence and testimony which exceed these limited boundaries.

N. <u>Motion No. 14 – Preclude the Port's Expert Witness David L. Blount</u>. (Doc. No. 138.)

Finally, Defendant seeks to preclude the Port from offering testimony or the expert report of Port's Expert Witness David L. Blount regarding his opinions of the motive, intent and state of mind of Douglas Beal because Mr. Blount is not an engineer or geologist, and the relevance of his opinions and expert report do not outweigh their prejudicial effect. (Defs' MIL No. 14 at 2, Doc. No. 138.)

The Port opposes the motion contending that Mr. Blount's opinions go to industry standards of what constitutes investigative versus remedial work in the context of environmental clean-ups. (Pl.'s Opp. Dft. MIL No. 14 at 1, Doc. No. 162.) Moreover, Mr. Blount's vast experience in the field of environmental clean-up and cost assessment for

associated work negates any concerns and outweigh any purported prejudicial effect that may arise from the fact that he is not a licensed geologist or engineer. (*Id.*)

The motion is **GRANTED in part and DENIED in part**. National Union's motion is **DENIED** as to Mr. Blount's testimony and expert report as to the industry practices regarding what constitutes investigative versus remedial work in the context of environmental clean-ups and assessing the related costs of such work. The motion is **GRANTED** as to evidence and testimony that exceeds the aforementioned limited boundaries.

## II. The Port's Motions in Limine

### A. Motion No. 1 – Exclude the Errata Sheet of Wanda Smith-Campbell. (Doc. No. 120.)

The Port seeks to preclude Defendant from introducing into evidence Smith-Campbell's errata sheet or from using the errata sheet to object to the Port's use of Smith-Campbell's videotaped deposition. (Pl.'s MIL No. 1 at 1, Doc. No. 120.)

Defendant opposes the motion contending that it is consistent with her corrections to those several portions of her testimony that contained mistakes. (Defs' Opp. Pl.'s MIL No. 1 at 2, Doc. No. 159.)

The motion is **DENIED**.

### B. Motion No. 2 – Expert Opinion Testimony. (Doc. No. 121.)

The Port seeks to preclude Defendant from introducing expert opinion testimony of experts John Goldwater, Philip R. Watters, and Albert L. McComas, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (Pl.'s MIL No. 2 at 1, Doc. No. 121.)

Defendant opposes the Port's motion contending that it is an effort to undercut National Union's defense before any of their expert witnesses offer any admissible opinion testimony that will assist the trier of fact. (Defs' Opp. Pl.'s MIL No. 2 at 2-3, Doc. No. 168.)

The motion is **GRANTED in part and DENIED in part**. The Port's motion is **GRANTED** as to Expert Witness opinion testimony of Philip R. Watters because according to his expert report, his opinion is based solely on Rimkus' subjective definitions and standards of investigation costs and remediation costs. Moreover, it provides no basis or insight into how the Rimkus' definitions of investigative versus remediation costs are derived. Nor does it explain how or why the Rimkus' definitions are appropriate or how they should be applied. Of note, Watters' concedes that neither California nor the EPA uses Rimkus' phrase "contaminant mass" in any of their definitions of remediation activity. Moreover, he admits that people within the environmental community do not use Rimkus' definition of remediation as "activities that impact the contaminant mass at a site." (*Id.* at 11.)

The Port's motion is **DENIED** as to Expert Witness opinion testimony of John Goldwater and Albert L. McComas.

    C.    <u>Motion No. 3 – Other Insurance Carrier Policies and Settlements Between Port and Other Carriers and Third Parties</u>. (Doc. No. 127.)

The Port seeks to exclude all testimony and evidence related to its insurance policies with other insurance carriers and third parties on the grounds that such evidence is irrelevant and conveying it to a jury would be highly improper and prejudicial even if the court sustained an objection and instructed the jury not to consider such facts. (Pl.'s MIL No. 3 at 1, Doc. No. 127.)

Defendant opposes the Port's motion contending that it is not based on actual facts of the case, nor the underlying claims and suits at issue in this matter, but instead is founded on mere imaginary motivations. (Defs' Opp. Pl.'s MIL No. 3 at 2, Doc. No. 167.)

The motion is **DENIED**. The probative value of the evidence with respect to National Union's action's in regards its determination of exhaustion of the underlying primary policies outweighs any potential prejudice that may arise. The Port framed this Motion in Limine expansively without pointing to any specifics. At this point, there is no

14

3:15-cv-01401-BEN-MDD

basis for excluding any specific evidence. However, should the situation change during the trial, the Port may request the Court to reconsider its holding on this motion.

D. <u>Motion No. 4 – Confidential Status Report Communications</u>. (Doc. No. 133.)

The Port seeks to preclude Defendant from introducing evidence, testimony or referencing at trial confidential and privileged status reports as to third parties. (Pl.'s MIL No. 4 at 1, Doc. No. 133.)

Defendant opposes the motion contending the Port's effort to preclude Defendant from introducing defense counsel's status reports prepared in the underlying claims and suits is based on a fundamental misunderstanding or misreading of Calif. Civil Code section 2860(d) ("Section 2860(d)"), and its unsupportable position that the status reports are not relevant to the instant action. (Defs' Opp. Pl.'s MIL No. 4 at 2, Doc. No. 163.)

The Court **RESERVES** ruling on the Port's Motion in Limine No. 4. The admissibility of the evidence and testimony will be determined at trial.

## **CONCLUSION**

In summary, the Court rules as follows:

1. The Court **DENIES** Defendant's Motion in Limine No. 1. (Doc. No. 122.)
2. The Court **DENIES** Defendant's *Amended* Motion in Limine No. 2. (Doc. No. 130.)
3. The Court **DENIES** Defendant's Motion in Limine No. 3. (Doc. No. 136.)
4. The Court **DENIES** Defendant's Motion in Limine No. 4. (Doc. No. 137.)
5. The Court **GRANTS in part and DENIES in part,** Defendant's Motion in Limine No. 5. (Doc. No. 124.)
6. The Court **DENIES as MOOT/WITHDRAWN,** Defendant's Motion in Limine No. 6. (Doc. No. 131.)
7. The Court **RESERVES RULING** on National Union's Motion in Limine No. 7 to preclude from evidence the document entitled "Chartis U.S.

Domestic Legal Compliance Manual," Port Trial Exhibit 229 until trial. (Doc. No. 135.)

8. The Court **DENIES** Defendant's Motion in Limine No. 8. (Doc. No. 141.)
9. The Court **DENIES** Defendant's Motion in Limine No. 9. (Doc. No. 147.)
10. The Court **DENIES** Defendant's Motion in Limine No. 10. (Doc. No. 145.)
11. The Court **DENIES** Defendant's Motion in Limine No. 11. (Doc. No. 143.)
12. The Court **DENIES** Defendant's Motion in Limine No. 12. (Doc. No. 144.)
13. The Court **GRANTS in part and DENIES in part**, Defendant's Motion in Limine No. 13 as to the preclusion of testimony by the Port's Expert Witness Dorn Bishop. (Doc. No. 139.)
14. The Court **GRANTS in part and DENIES in part**, Defendant's Motion in Limine No. 14 as to the preclusion of testimony by the Port's Expert Witness David Blount. (Doc. No. 138.)
15. The Court **DENIES** the Port's Motion in Limine No. 1. (Doc. No. 120.)
16. The Court **GRANTS in Part and DENIES in part, the** Port's Motion in Limine No. 2. (Doc. No. 121.)
17. The Court **DENIES the** Port's Motion in Limine No. 3. (Doc. No. 127.)
18. The Court **RESERVES** ruling on the Port's Motion in Limine No. 4. The admissibility of the evidence and testimony will be determined at trial. (Doc. No. 133.)

**IT IS SO ORDERED.**

DATED: October __, 2018

_____
HON. ROGER T. BENITEZ
United States District Judge